IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-175 |
| | ) | |
| CLARK ALAN ROBERTS and | ) | (PHILLIPS/SHIRLEY) |
| SEAN EDWARD HOWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This case came before the Court on September 10, 2009, for a motion

hearing on Defendant Roberts' Motion to Dismiss the Superseding Indictment on the Basis of

Failure to State an Offense and Constitutional and Procedural Deficiencies [Doc. 27] and Motion

to Dismiss the Superseding Indictment on the Basis of Unconstitutional Vagueness [Doc. 29], both

of which have been adopted by Defendant Howley. Assistant United States Attorneys D. Gregory

Weddle and Thomas S. Dougherty appeared on behalf of the government. Attorneys W. Thomas

Dillard and Stephen Ross Johnson were present for Defendant Roberts, who attended the hearing.

Attorney Douglas A. Trant represented Defendant Howley, who was also present. The parties

presented argument on the pending motions, and the Court took the motions under advisement at

the conclusion of the hearing.

1

# I.  POSITIONS OF THE PARTIES

The Superseding Indictment [Doc. 6] charges both defendants in each of eleven counts.  Counts one through Seven allege violations of the Economic Espionage Act, 18 U.S.C. § 1832.  Count One alleges that the defendants conspired to commit theft of trade secrets, unauthorized photographing and transmitting of trade secrets, and receiving and possessing of trade secrets.  Count Two charges the defendants with theft and attempted theft of trade secrets.  Count Three asserts that the defendants photographed and attempted to photograph trade secrets.  Counts Four through Six allege that the defendants transmitted or attempted to transmit trade secrets.  Count Seven charges the defendants with the possession or attempted possession of stolen trade secrets.  Counts Eight through Ten each state that the defendants committed wire fraud, and Count Eleven charges them with conspiracy to commit wire fraud.

The defendants contend that the Superseding Indictment is defective because the Economic Espionage Act, 18 U.S.C. § 1832, is unconstitutionally vague as applied to them and because the indictment fails to allege necessary elements and facts.  The defendants argue that the Economic Espionage Act is unconstitutionally vague as applied in this case because the indictment does not allege that they knew the roll over-ply down device contained a trade secret.  In this regard, they assert that the indictment contains no allegations that they knew the information contained in the roll over-ply down device was proprietary, that they knew their actions were illegal, or that they knew the roll over-ply-down device derived economic value from not being generally known to or accessible by the public.  They contend that if such allegations are not required to be in the indictment then the statute fails to provide adequate notice of the type of conduct that is prohibited.

The defendants also argue that the Superseding Indictment fails to allege the essential elements of the offenses and the facts necessary to appropriately particularize the charges. They fault Count One with failing to allege that the defendants intended (1) that the item converted be a trade secret, (2) that the economic benefit from the theft of the trade secret go to someone other than the owner, and (3) that the theft of the trade secret injure the trade secret's owner. With regard to Counts Two through Eleven, the defendants assert that the indictment fails to allege that the defendants knew that the alleged trade secret met the statutory definition of a trade secret from 18 U.S.C. § 1839(3)(A)-(B). Finally, with regard to Counts Eight through Eleven, the defendants argue that the Superseding Indictment makes bare legal conclusions that certain representations were false and material, without providing the facts to show that the representations were material or that they caused Goodyear to part with property or to take some action that it would not have without the misrepresentation.

The government responds [Doc. 54] that the the Economic Espionage Act is not unconstitutionally vague as applied because it requires a showing that the defendants knew the information or object at issue was proprietary. It also asserts that the Superseding Indictment provides notice of the charges and tracks the required statutory language.

## II.  ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. Amend. V.

3

## A. Constitutionality of the Economic Espionage Act

The defendants argue that the Economic Espionage Act (EEA) is void for vagueness as applied to them unless it is interpreted to require that they knew the information allegedly stolen was a trade secret. In this regard, they argue that the Superseding Indictment fails to allege that they knew the information contained in the roll over-ply down device constituted a trade secret, that their actions were illegal, or that they new that the roll-over-ply down device derived economic value from not being generally known to or ascertainable by the public. The government responds that the EEA is not vague because it requires an awareness by the defendants that the information at issue was proprietary. On the other hand, the government contends that the EEA does not require that the defendants knew the information meets the statutory definition of a trade secret or that their actions were illegal.

Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "[O]rdinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others[.]'" United States v. Williams, 128 S. Ct. 1830, 1845 (2008) (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982)). The Supreme Court has recently distinguished between statutes that are void for vagueness under the Due Process Clause and the problematic hypotheticals that can be imagined under virtually any statute:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.

4

Thus, [the Supreme Court has] struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"-wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

Id. at 1846. To survive a vagueness challenge, a statute must give "relatively clear guidelines as to prohibited conduct." Posters 'N' Things, Ltd. v. U.S., 511 U.S. 513, 525 (1994). "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954).

The EEA provides, in pertinent part, as follows:

(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly–

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or

imprisoned not more than 10 years, or both.

18 U.S.C. § 1832(a). The statute defines a "trade secret" as

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if–
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]

18 U.S.C. § 1839(3).

As a starting point to the vagueness analysis, the Court must determine whether section 1832(a) requires that a defendant know he or she is stealing a trade secret. In their Motion to Dismiss the Superseding Indictment on the Basis of Failure to State an Offense and Constitutional and Procedural Deficiencies [Doc. 27], the defendants argue that the mental state "intent" in the first clause of subsection (a) modifies both "convert" and "trade secret" and that the language "intending or knowing," which occurs later in that subsection, modifies the subsequent term "trade secret." Accordingly, the defendants conclude that an individual charged under this subsection must have intended that the item he or she converted be a trade secret and that the indictment must so charge. In support of this interpretation, the defendants rely on Flores-Figueroa v. U.S., 129 S. Ct. 1886 (2009). There, the Court, interpreting a portion of the aggravated identity theft statute, held that in interpreting the statute in conformity with ordinary English usage, an adverb (there "knowingly")

6

preceding a transitive verb with an object modifies both the verb (or verbs) and the object. Id. at 1890, 1894. The present Court finds it hard to apply the holding from Flores-Figueroa to the portions of the EEA that the defendants cite because the *mens rea* terms the defendants point out are not adverbs. "Intent" in the first clause of subsection (a) is a noun, and "intending or knowing" are verbs.

"'In all cases of statutory construction, the starting point is the language employed by Congress. Where the statute's language is plain, the sole function of the courts is enforce it according to its terms.'" United States v. Calor, 340 F.3d 428, 431 (6th Cir. 2003) (quoting Vergos v. Gregg's Enters., Inc., 159 F.3d 989, 990 (6th Cir.1998) (internal quotation marks and citations omitted)). Only if the statutory language is ambiguous or "'when, although the statute is facially clear, a literal interpretation would lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress'" should the Court move beyond this initial step. Id. (quoting Vergos, 159 F.3d at 990). The Court finds that a plain reading of the initial clause of section 1832(a) reveals that a person committing theft of trade secrets has to have intent "to convert a trade secret" and that said secret be converted "to the economic benefit of anyone other than the owner thereof." Furthermore, the person committing theft of trade secrets must intend or know that the theft will "injure any owner of that trade secret." In other words, the plain language of the statute provides that one guilty of economic espionage did not just steal something that turned out to be a trade secret, he or she had to have intended that the item stolen be a trade secret. To find otherwise would read the terms "trade secret" out of the statute.

This interpretation comports with the vagueness analysis conducted by other courts with respect to the EEA. As noted by the government, no court examining the issue, including the

Court of Appeals for the Sixth Circuit, has determined that the EEA is unconstitutionally void for vagueness as applied. See United States v. Krumrei, 258 F.3d 535, 539 (6th Cir. 2001); United States v. Genovese, 409 F. Supp. 2d 253, 257-58 (S.D.N.Y. 2005); United States v. Hsu, 40 F. Supp. 2d 623, 627-31 (E.D. Pa 1999); see also United States v. Yang, 281 F.3d 534, 544 n.2 (6th Cir. 2002) (addressing vagueness issue in a footnote); United States v. Chung, No. SACR 08-0024-CJC, 2009 WL 997341, *2-3 (C.D. Cal. Apr. 13, 2009); United States v. Case, No. 3:06-CR-210-WHB-JCS, 2008 WL 1932403, *7 (S.D. Miss. Apr. 25, 2008), rev'd in part on other gnds, 309 Fed. Appx. 883 (5th Cir. 2009). At least two of these courts have expressed that the *mens rea* component of section 1832 applies to the fact that the item or information at issue is a trade secret. Chung, 2009 WL 997341, at *2 n.1 ("The EEA has a double scienter requirement: a defendant must *knowingly* steal a trade secret *knowing* that it will benefit a foreign government"); Hsu, 40 F. Supp. 2d at 631 n. 8 ("To be convicted under the EEA, a defendant must 'knowingly' set out to violate the statute"). The question is what exactly must the defendant know with regard to the item or information's status as a trade secret. See United States v. Nosal, No. CR 08-00237, 2009 WL 981336, *3 (N.D. Cal. Apr. 13, 2009).

The defendants rely on the case law addressing the vagueness challenges to argue that the government must show that they knew the roll over-ply down device contained an actual trade secret, i.e., that it met the statutory definition of a trade secret, and that they knew their actions were illegal. They argue that unless the EEA's knowledge requirement is deemed to have these components, then the EEA is unconstitutionally vague as applied to them because they could not have reasonably known their alleged conduct was proscribed. The government argues that the case law simply requires that it show the defendants were aware that the roll over-ply down device was

8

proprietary.

The defendants rely primarily upon <u>Krumrei</u> and <u>Hsu</u> to argue that the EEA requires that a defendant know that the item or information at issue is proprietary and his or her actions are illegal. In <u>Krumrei</u>, the Sixth Circuit held that because the defendant therein knew the information was proprietary and his actions were illegal, the EEA was constitutional as applied. 258 F.3d at 539. In that case, Defendant Krumrei argued that the indefiniteness of what constitutes "reasonable measures" in the definition of a trade secret could lead to arbitrary and discriminatory enforcement of the statute. <u>Id.</u> at 538. The government, in turn, argued that even if there were some conditions under which the EEA might be vague, under the facts of that case, the statute was not vague as to Krumrei who clearly knew that his actions were prohibited. <u>Id.</u> In looking to the evidence presented at the guilty plea hearing, the appellate court found that Krumrei "was aware that he was selling confidential information to which he had no claim." <u>Id.</u> at 539. The Court found that the defendant's admissions at the guilty plea hearing revealed that he knew that the information was proprietary. <u>Id.</u> Moreover, it concluded from the stipulated facts that despite knowing that the information was proprietary, Krumrei endeavored to sell it for his own personal gain and to the detriment of the owner. <u>Id.</u> Finally, and importantly for the present determination, the court concluded that Krumrei did not have to know the specific measures that the owner had taken to protect the information:

> Furthermore, we hold that defendant need not have been aware of the particular security measures taken by [the owner]. Regardless of his knowledge of those specific measures, defendant knew that the information was proprietary. As the Pennsylvania district court held in <u>Hsu</u>, defendant cannot claim that the statute is vague when he clearly was aware that his actions fell well within the activity proscribed by the statute.

Id. Thus, the Sixth Circuit held that the EEA was not unconstitutionally vague as applied to Krumrei. Id.

The undersigned finds that this reasoning in Krumrei indicates that a defendant must know that the information he or she seeks to steal is proprietary, meaning belonging to someone else who has an exclusive right to it, but does not have to know that it meets the statutory definition of a trade secret. The Southern District of New York has also upheld a vagueness challenge to the definition of trade secret. Genovese, 409 F.Supp.2d at 257. In that case, the defendant downloaded a Microsoft source code from the Internet and offered it for sale on his website. Id. at 255. Defendant Genovese argued that the statutory definition of trade secret was vague as applied to the facts of his case because having located the source code on the Internet, where it had been posted by a third party, "he could not have known that it was 'not . . . generally known to . . . the public' and that Microsoft had taken 'reasonable measures' to safeguard it." Id. at 257. The court inferred from Genovese's website posting describing the code as "jacked" and stating that one would have to "look hard" to find it that Genovese knew the code was not public knowledge. Id. The court went on to hold that Genovese did not have to be aware of the specific security measures that Microsoft employed because he knew that the source code was proprietary and that Microsoft's protective measures had already been defeated. Id. at 258.

In Hsu, the Eastern District of Pennsylvania held that the terms "reasonable measures," "generally known to," and "not being readily ascertainable" in the definition of a trade secret were not unconstitutionally vague as applied because the defendant had been told that the information in question was proprietary. 40 F. Supp. 2d at 628. The court found that "[t]o be convicted under the EEA, defendant must 'knowingly' set out to violate the statute." Id. at 631 n.8.

Defendant Hsu was charged with conspiracy to steal trade secrets and attempted theft of trade secrets for his efforts to acquire the technology used in producing a cancer medication from an FBI agent in a sting operation. The court found the evidence showing that the defendant was told several times that the technology was proprietary to its owner, could not be obtained with a license, and would have to be obtained from a corrupt employee prevented the defendant from successfully arguing that the term "reasonable measures" was vague as to him. Id. at 628. The court found the the terms "generally known to" and "not being readily ascertainable" to be much more problematic because under the facts of that case, much of the information that Hsu was attempting to gain was known, particularly in scientific circles. Id. at 629-31. Nevertheless, the court concluded that upon careful review of the evidence, "it appears that Hsu knew *(or at a minimum believed)* that the 'second generation' taxol information he was seeking to acquire was not "generally known to" or "readily ascertainable through proper means by the public.'" Id. at 630-31 (emphasis added).

In fact, the third circuit had already held in an earlier appeal of the case that legal impossibility is not a defense to attempt and conspiracy to steal a trade secret. United States v. Hsu, 155 F.3d 189, 202 (3rd Cir. 1998). Accordingly, the Sixth Circuit has interpreted Hsu to stand for the premise that for the crimes of attempted theft of trade secrets and conspiracy to steal trade secrets, the government only has to prove that the defendant believed he was stealing a trade secret, not that it actually was one. Yang, 281 F.3d at 542. With regard to Defendant Yang's vagueness argument, the Sixth Circuit concluded, at least with regard to inchoate crimes:

> The statute clearly proscribes the attempt or conspiracy to steal trade secrets. We have every confidence that ordinary people seeking to steal information that they *believe* is a trade secret would understand that their conduct is proscribed by the statute.

Id. at 544 n.2 (emphasis added).

Finally, although not assessing a vagueness challenge, the Northern District of California specifically tackled the question of whether the EEA requires that the government prove that the defendant knew his or her actions were illegal. United States v. Nosal, No. CR 08-00237, 2009 WL 981336, *3 (N.D. Cal. Apr. 13, 2009). The court held that neither Krumrei nor Hsu "stand for the proposition that the statute requires proof of knowlege of illegal behavior." Id. Instead, the holdings in these cases–that the defendants therein knew the information was a proprietary yet sought to sell it or to obtain it anyway–"make it plain it is the knowledge of trade secrets, not the knowledge of illegal behavior, that the EEA requires." Id. Thus, the court held that the indictment properly stated an offense by alleging that Defendant Nosal knew the information taken was proprietary to its owner and that the defendant knowingly stole it anyway. Id.

At the September 10 hearing, counsel for Defendant Roberts argued that the EEA was void for vagueness as applied to the defendants due to the Superseding Indictment's lack of an allegation that the defendants knew the information contained in the roll over-ply down device was a trade secret. The government argued that although it had to prove at trial that the information taken met the statutory definition of a trade secret, the statute did not require that the defendants knew that what they were taking was a trade secret. It maintained that the defendants only had to know that the information was proprietary (that it was owned by someone else) and that they were taking the information with the intent to benefit someone else economically. The parties debated whether a person who stole a paper containing a trade secret in order to make notes on the blank side or a person who stole a prototype anti-gravity pen believing it was an ordinary pen could be charged with economic espionage. The Court finds that the statute itself protects against what would amount

12

to "accidental espionage" by imposing a knowledge requirement:

> To be convicted under the EEA, a defendant must "knowingly" set out to violate the statute. <u>See</u> 18 U.S.C. § 1832(a). Therefore, a person who takes a "trade secret" because of ignorance, mistake, or accident should not be successfully prosecuted.

<u>Hsu</u>, 40 F. Supp. 2d at 631 n.8. Accordingly, based upon careful review of the case law, the Court finds that the EEA does require that a defendant know (or in the case of inchoate crimes, at least believe) that he or she is taking a trade secret in that the item or information being taken is proprietary and is being taken for the economic benefit of someone other than the owner. This knowledge requirement, however, does not include specific knowledge that the defendant's actions are illegal or knowledge on the part of the defendant that the trade secret in question actually meets the statutory definition.

Finally, the possibility that one could envision an unconstitutional application of the EEA is not relevant in an assessment of whether the statute is constitutional as applied to the instant defendants. <u>See</u> <u>Williams</u>, 128 S. Ct. at 1845. In the present case, momentarily taking the allegations in the indictment as true, the defendants, engineers at Wyko, were to design tire manufacturing equipment for "off the road" (OTR) tires to fulfill a contract with a Chinese company. As a part of this contract, Wyko had agreed to make a roll over-ply down device for the Chinese company. Wyko had never before manufactured a roll over-ply down device for OTR tires. The defendants formed a plan to take unauthorized photographs of Goodyear's roll over-ply down device while representing that they were visiting the Goodyear facility to evaluate Wyko made equipment for repairs. During their visit to the Goodyear facility, Defendant Roberts falsely told the security guard that he had signed a nondisclosure agreement within the past year. Both defendants then falsely stated to the Goodyear engineer escorting them that the reason they were there was to

evaluate Wyko-made equipment for possible repairs. Defendant Howley used his cellular telephone to take seven photographs of Goodyear's roll over-ply down device while Defendant Roberts acted as a lookout for Goodyear employees. Defendant Howley subsequently emailed the photographs to his work email account and then sent them to Defendant Roberts' work email account. Defendant Roberts emailed the photographs to Wyko employees in England. The Court finds that if these allegations are taken as true, they reveal that the defendants knew the roll over-ply down device contained proprietary information. See, e.g., Chung, 2009 WL 997341, at *3 (finding an ordinary person would know that the information was not generally known or readily ascertainable based upon the measures that the owner took to protect the information and the steps that the defendants took to get it). The Court also finds that the allegations that the defendants photographed the device in order to convert that information to Wyko's economic benefit is not unconstitutionally vague, alleges actions falling within the statutorily proscribed activity, and adequately alleges conduct the defendants knew to be proscribed. Accordingly, the Court concludes that the EEA is not vague as applied to these defendants.

### B. Failure to Allege an Offense

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001)

(quoting <u>Hamling</u>). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" <u>Hamling</u>, 418 U.S. at 117 (quoting <u>United States v. Carll</u>, 105 U.S. 611, 612 (1882)); <u>Landam</u>, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" <u>Hamling</u>, 418 U.S. at 117-18 (quoting <u>United States v. Hess</u>, 124 U.S. 483, 487(1888)); <u>Landam</u>, 251 F.3d at 1079. A defendant may challenge a defect in the indictment, such as its failure to state an offense, before trial. Fed. R. Crim. P. 12(b)(2).

The defendants bring three main challenges to the sufficiency of the Superseding Indictment to state an offense: (1) Count One fails to allege the *mens rea* element that the defendants intended to convert a trade secret, (2) Counts Two through Eleven fail to allege that the defendants knew that the roll over-ply down device met the statutory definition of a trade secret, and (3) Counts Eight through Eleven fail to allege facts showing that the stated falsehoods were material.

*(1) Intent to Convert a Trade Secret*

The defendants argue that the intent that the item being converted be a trade secret is an essential element of the theft of trade secrets. They maintain that the Count One of the Superseding Indictment fails to allege this necessary element. The government responds that the statute does not require that a defendant know the item he or she converts is an actual trade secret, just that the item is proprietary. At the September 10 hearing, defense counsel explained that the "intent" language in 18 U.S.C. § 1832(a) modifies both "convert" and "trade secret." The government argued that the defendants did not have to know that they were taking a trade secret, just

15

that they were not authorized to take the item they took and that they took the item with the intent to benefit someone else economically.

After incorporating the introductory allegations, Count One alleges that

12. Beginning on a date unknown to the Grand Jury but at least by, on or about April 18, 2007, and continuing until on or about June 1, 2007, in the Eastern District of Tennessee, and elsewhere, the defendants,

### CLARK ALAN ROBERTS and SEAN EDWARD HOWLEY

did knowingly and willfully combine, conspire, confederate, agree with each other, and others known and unknown to the Grand Jury, to commit the following offenses:

(a) Theft of trade secrets, in violation of Title 18, United States Code, Section 1832(a)(1);

(b) Unauthorized photographing and transmitting trade secrets, in violation of Title 18, United States Code Section 1832(a)(2); and

(c) Receiving and possessing trade secrets, while knowing the same to have been stolen and taken without authorization, in violation of Title 18, United States Code, Section 1832(a)(3).

Count One goes on to allege the manner and means by which the defendants carried out the conspiracy and eleven overt acts committed in furtherance of the conspiracy.

The Economic Espionage Act provides, in pertinent part, as follows:

(a) Whoever, with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly–

(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

16

(2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

(4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy,

shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1832(a).

  As discussed with regard to the defendants' vagueness challenge above, the Court finds that the plain language of the statute requires that a defendant intend and/or know and/or believe that he or she is stealing a trade secret. Having so determined, the Court must now decide whether this element has to be specifically alleged in Count One, which charges the defendants with conspiracy to commit theft of trade secrets, unauthorized photographing and transmitting of trade secrets, and receiving and possessing trade secrets. As discussed briefly as a part of the vagueness analysis above, conspiracy is an inchoate crime. United States v. Robinson, 547 F.3d 632, 638 (6th Cir. 2008) (observing it is well settled that "conspiracy is an inchoate offense that needs no substantive offense for its completion").

  With regard to Count One, the government argues that all the elements of conspiracy under section 1832(a)(5) are sufficiently alleged. It maintains that a conspiracy under section

1832(a)(5) requires an agreement and an overt act taken in furtherance of the conspiratorial objective. See United States v. Hsu, 155 F.3d 189, 204 n.21 (3rd Cir. 1998). It contends that paragraph 12 of the Superseding Indictment (quoted above) alleges that the defendants conspired and agreed to commit violations of section 1832(a)(1), -(2), and -(3). Paragraph 14 sets out the overt acts committed by the defendants to bring about the object of the conspiracy. Accordingly, it asserts that the indictment is sufficient. Moreover, it maintains that Count One does not need to allege all of the underlying elements of the violations of section 1832(a)(1), -(2), and -(3), as defendants argue, but instead is sufficient if it identifies the object offenses and refers to the specific statutory sections involved. See Wong Tai v. U.S., 273 U.S. 77, 81 (1927) (observing that "[i]t is well settled that in an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, . . .or to state such object with the detail which would be required in an indictment for committing the substantive offense"); United States v. Fruehauf Corp., 577 F.2d 1038, 1071 (6th Cir. 1978) (concluding that the indictment "identified the object offenses, referring appellants to the specific statutory sections involved, and for the purpose of an indictment charging a conspiracy offense, that was sufficient").

   The Court agrees with the government that the Superseding Indictment sufficiently alleges an agreement and overt acts taken in furtherance of the conspiracy's object. The Court also agrees that the indictment does not have to set out the elements of the underlying offenses allegedly committed in furtherance of the conspiracy (subsections 1832(a)(1)-(3)). Finally, the Court finds that this is even so with regard to the element that the defendants knew the item at issue was a trade secret. In United States v. Yang, the Sixth Circuit addressed the defendants' argument that the trial

18

court erroneously ruled that the government did not have to prove that what the defendants sought to steal was an actual trade secret. 281 F.3d 534, 541 (6th Cir. 2002). The Court was persuaded by the Third Circuit's holding in Hsu (also discussed above in the vagueness analysis) that with regard to inchoate crimes relating to theft of a trade secret, the government only had to prove that the defendant believed the item to be a trade secret, not that it actually was one. Yang, 281 F.3d at 542. The court found that Yang and his codefendants agreed to steal trade secrets and committed an overt act (going to the hotel room to meet the FBI agent with the purported trade secrets): "It is the mutual understanding or agreement itself that is criminal, and whether the object of the scheme actually is, as the parties believe it to be, unlawful is irrelevant." Id. at 544. Based on this analysis, the Court finds that Count One states the offense of conspiracy to commit theft of trade secrets despite its failure to specifically alleged that the defendants knew they were stealing a trade secret.

Moreover, the factual allegations contained within Count One are sufficient to put the defendants on notice that they are alleged to know they were conspiring to steal a trade secret. Count One expressly incorporates the introductory allegations in paragraphs one through ten. Paragraph ten alleges that "Goodyear's roll over-ply down device contained trade secret information and was protected by Goodyear as confidential and proprietary information." Paragraph ten then lists ten security measures that Goodyear took to protect its trade secret. Count One goes on to allege in paragraph thirteen that the defendants "would and did carry out the conspiracy and effect its unlawful objects, that is the theft, unauthorized photographing, transmittal and possession of trade secrets contained in the roll over-ply down device owned by Goodyear[.]" This paragraph thus alleges that the defendants intended ("would and did") to convert a trade secret. Finally, the introductory allegations allege that the defendants, employees of Wyko Tire Technology

19

Incorporated, were responsible for designing a roll over-ply down device for a Chinese tire manufacturing company, for which Wyco would be paid $307,000. The introductory allegations also allege that Wyco had never made a roll over-ply down device for large over-the-road tires, which is the type of device it had contracted to provide and the type of device that Goodyear had at its Topeka tire manufacturing facility. These factual allegations reveal that the defendants intended that Goodyear's trade secret be converted "to the economic benefit of anyone other than the owner thereof." The Court finds that Count One states an offense.

*(2) Knowledge of the Statutory Definition of a Trade Secret*

The defendants contend that it is not enough that the Superseding Indictment allege various crimes relating to a trade secret generally, it must allege in each count that they knew that the trade secret involved in this case met the statutory definition of a trade secret. They maintain that this definition is an essential element of the offenses. The government argues that section 1832 already requires a heightened intent standard to protect against a conviction resulting from accident or mistake. Moreover, the definition of trade secret is evaluated from an objective standard, rather than from the perspective of what the defendant knew. Thus, it argues that the indictment does not have to allege that the defendants knew the trade secret alleged therein met the statutory definition of a trade secret, but at trial, the government must prove that it does.

The EEA defines a "trade secret" as

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically,

20

photographically, or in writing if–

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]

18 U.S.C. § 1839(3). In the vagueness analysis above, the Court has largely addressed the issue of whether knowledge of a trade secret means knowledge that the trade secret in question meets the statutory definition and has determined that it does not. Two courts have expressly found that a defendant has knowledge of a trade secret despite having no specific knowledge of the "reasonable measures" taken by the owner of the secret to protect it. United States v. Krumrei, 258 F.3d 535, 539 (6th Cir. 2001) ("hold[ing] that defendant need not be aware of the particular security measures taken by" the owner); United States v. Genovese, 409 F.Supp.2d 253, 258 (S.D.N.Y. 2005). Accordingly, the Court finds that the failure of the Superseding Indictment to allege the elements of the definition of a trade secret is not a fatal defect in the indictment.

*(3) Materiality*

The defendants contend that although materiality is an essential element of wire fraud, the Superseding Indictment fails to allege any facts in support of the element of materiality. Instead, the indictment simply makes the bare legal conclusion that the defendants' alleged misrepresentations were material. The government responds that the Superseding Indictment makes a facially sufficient allegation of materiality. It maintains that the defendants are essentially faulting the indictment for failing to prove on its face that the statements were material, which is a matter for the jury to determine.

At the hearing, defense counsel argued that the indictment alleges two false statements and makes the bare assertion that they are material without giving any factual context to show that the misrepresentations are material. The government contended that the material nature of the misrepresentations is clear from the context of the allegations in the Superseding Indictment: If the defendants had not made the misrepresentations, then Goodyear would not have let them in. It maintained that paragraph 25 shows that the misrepresentations are material and that the introductory paragraphs alleged the facts showing how they were material.

Counts Eight through Eleven charge the defendants with three substantive instances of wire fraud and with wire fraud conspiracy. These counts are premised upon the following underlying factual allegations:

> 24. Beginning on an unknown date in 2007 and continuing until on or about June 1, 2007, the defendants, devised and intended to devise the following scheme and artifice to defraud Goodyear of its confidential proprietary information:
>
> (a) It was part of the scheme and artifice to defraud that defendants CLARK ALAN ROBERTS and SEAN EDWARD HOWLEY planned to take unauthorized photographs of the roll over-

22

ply down device to assist Wyco with the design and manufacture of a similar device for HHSC, during their visit to Goodyear's Topeka tire manufacturing facility.

(b) It was further part of the scheme and artifice to defraud that defendant SEAN EDWARD HOWLEY planned to take unauthorized photographs of the roll over-ply down device while Defendant CLARK ALAN ROBERTS would act as a lookout for Goodyear employees.

(c) As a further part of the scheme and artifice to defraud, defendant CLARK ALAN ROBERTS made a materially false representation on or about May 30, 2007 to a security guard at the Goodyear Topeka tire manufacturing facility that he had previously signed a Goodyear Form 408 "Agreement of Visitors to Goodyear Facilities" within the previous year, when, in fact, as defendant CLARK ALAN ROBERTS well knew, he had not done so.

(d) Also as part of the scheme and artifice to defraud, defendants CLARK ALAN ROBERTS and SEAN EDWARD HOWLEY, made materially false representations on or about May 30, 2007 to their escort, a Goodyear engineer, that the sole reason for their visit to the Goodyear Topeka tire manufacturing facility was to evaluate Wyko made equipment for possible repairs when, in fact, as they then well knew, they intended to take unauthorized photographs of Goodyear's roll over-ply down device.

(e) It was further part of the scheme to defraud that defendants CLARK ALAN ROBERTS and SEAN EDWARD HOWLEY would transmit the unauthorized photographs of Goodyear's roll over-ply down device to other Wyco employees to be used to assist Wyko in constructing a roll over-ply down device for HHSC.

"Materiality" is an element of a "scheme or artifice to defraud" under the federal wire fraud statute. Neder v. U.S., 527 U.S. 1, 25 (1999). A statement is material if it has "'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Id. at 16 (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995) (itself quoting prior Supreme Court cases)). The misrepresentation "'must have the purpose of

23

inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission.'" United States v. Daniel, 329 F.3d 480, 487 (6th Cir. 2003) (quoting United States v. DeSantis, 134 F.3d 760, 764 (6th Cir. 1998)).

The defendants contend that Counts Eight through Eleven fail to allege the factual context to show the materiality of the alleged misrepresentations. To the contrary, Counts Eight through Eleven each expressly incorporate the introductory allegations contained in paragraphs one through ten. As quoted in section B. (1) above, paragraph ten states that the roll over-ply down device was "protected by Goodyear as confidential and proprietary information." Paragraph ten also sets forth the security measures Goodyear employed to protect the trade secrets in the roll over-ply down device, including housing the device in a locked restricted area, requiring visitors to this area to sign in and be pre-cleared for entry, posting a sign at the gate prohibiting cameras in the facility, requiring visitors to be escorted by a Goodyear employee, and requiring visitors to sign a non-disclosure agreement, the Goodyear F-408 "Agreement of Visitors to Goodyear Facitilities." These allegations about the measures Goodyear undertook to protect the roll over-ply down device provide the context for the allegation that the misrepresentations that Defendant Roberts had signed the F-408 and that the purpose of the defendants' visit was to assess Wyco-made equipment for repairs were material. In other words, paragraph ten sufficiently alleges that the misrepresentations had or would have had the effect of, or natural tendency toward, influencing or causing Goodyear to undertake some action that it otherwise would not have taken. The Court finds that the Superseding Indictment sufficiently alleges facts to show that the misrepresentations in Counts Eight through Eleven were material.

### III. CONCLUSION

After carefully considering the motions, memoranda, oral arguments and after reviewing the relevant legal authorities, the Court finds that the Economic Espionage Act is not unconstitutionally vague as applied to the instant defendants and that the Superseding Indictment [Doc. 6] alleges the elements and facts in sufficient detail to comport with the Fifth Amendment. For the reasons set forth herein, it is **RECOMMENDED** that the defendants' Motion to Dismiss the Superseding Indictment on the Basis of Failure to State an Offense and Constitutional and Procedural Deficiencies [**Doc. 27**] and Motion to Dismiss the Superseding Indictment on the Basis of Unconstitutional Vagueness [**Doc. 29**] be **DENIED**.[1]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).