IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-175 |
| | ) | |
| CLARK ALAN ROBERTS and | ) | (PHILLIPS/SHIRLEY) |
| SEAN EDWARD HOWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on November 12, 2009, for a motion hearing on Defendant Sean Edward Howley's Motion to Suppress Statements [Doc. 19] and Sealed Motion to Suppress Search Pursuant to Search Warrant [Doc. 25] and Defendant Clark Alan Roberts' Motion to Suppress [Doc. 39], in which the Court has permitted [Doc. 81] Defendant Howley to join. Assistant United States Attorneys D. Gregory Weddle and Thomas S. Dougherty appeared on behalf of the government. Attorneys W. Thomas Dillard and Stephen Ross Johnson were present for Defendant Roberts, who attended the hearing. Attorney Douglas A. Trant represented Defendant Howley, who was also present. The parties presented testimony and argument on the pending motions, and the Court took the motions under advisement at the conclusion of the hearing.

1

# I. POSITIONS OF THE PARTIES

The Superseding Indictment [Doc. 6] charges both defendants in each of eleven counts. Counts one through Seven allege violations of the Economic Espionage Act, 18 U.S.C. § 1832. Count One alleges that the defendants conspired to commit theft of trade secrets, unauthorized photographing and transmitting of trade secrets, and receiving and possessing of trade secrets. Count Two charges the defendants with theft and attempted theft of trade secrets. Count Three asserts that the defendants photographed and attempted to photograph trade secrets. Counts Four through Six allege that the defendants transmitted or attempted to transmit trade secrets. Count Seven charges the defendants with the possession or attempted possession of stolen trade secrets. Counts Eight through Ten each state that the defendants committed wire fraud, and Count Eleven charges them with conspiracy to commit wire fraud.

Both defendants ask the Court to suppress the evidence gained in the September 25, 2007 search of Wyko Tire Technology ("Wyko"), their place of employment, pursuant to a search warrant. Defendant Roberts contends [Doc. 39] that the search warrant was not sufficiently particular because it did not expressly narrow the search of the computer information. He also contends that the search of Wyco exceeded the scope of the search warrant. Defendant Howley joins in Defendant Roberts' arguments and also contends [Doc. 25] that a cellular telephone taken from his person must be suppressed because the search warrant did not authorize the search of his person.[1]

_____

[1]In his Sealed Motion to Suppress Search Pursuant to Search Warrant [Doc. 25], Defendant Howley also argued that the search warrant affidavit contains material omissions of fact, that if known to the issuing judge, would have required the striking of certain information from the affidavit in support of the search warrant. In his brief, he asserts that, in the absence of this information, the affidavit fails to provide probable cause for the warrant's issuance. Defendant Howley's brief references his affidavit and the affidavit filed in support of the search warrant, neither of which had been filed in the record at the time of the hearing. At the

Finally, Defendant Howley moves [Doc. 19] for the suppression of a statement he gave to law enforcement on the day the search warrant was executed, arguing that the statement was involuntary and the fruit of the illegal search. More specifically, he asserts that the officers did not advise him of the <u>Miranda</u> warnings at the time he gave the statement and that he was in custody at the time, because he did not feel free to leave.

The government responds [Docs. 50 and 53] that the defendants lack standing to contest the search of Wyko, their place of employment. Moreover, it contends [Doc. 53] that the Fourth Amendment does not require that a search warrant particularize the methodology for searching computer data. With regard to Defendant Howley's statement, the government argues [Doc. 46] that the defendant was not in custody at the time he made the statement and, thus, the <u>Miranda</u> warnings were not warranted.

## II. SUMMARY OF THE TESTIMONY

The government presented the testimony of Special Agent Kevin Gounaud, who is employed by the Federal Bureau of Investigation (FBI). Agent Gounaud testified that he investigated allegations of theft of trade secrets at Wyko and was present for the execution of a search warrant in September 2007. On the day of the search, the Wyko employees were asked to go to the break room during the execution of the search warrant for safety reasons and to secure the scene. Once there, an FBI agent briefed the employees on what was happening. The employees were informed that they were not required to stay and that they could leave the facility during the search. Once the agent finished reading the eleven-point statement to the employees, Agent

---

November 12 hearing, defense counsel for Defendant Howley withdrew these arguments.

Gounaud asked for Defendant Howley. When Howley approached, Agent Gounaud introduced himself and Agent O'Conner, and he shook Howley's hand. He told Howley that he would like to ask him some questions. He described the defendant's demeanor as cordial and friendly.

Agent Gounaud testified that Defendant Howley walked with he and Agent O'Conner to the office of Ismail Menguc, the general manager. Agent Gounaud had previously identified this office as a location at which interviews would be conducted because it was private, comfortable, and free of distractions. Agent Gounaud identified photographs of the office, which show a desk with a chair behind it and two chairs on the other side of it. During the interview, Agent O'Connor was seated behind the desk. Agent Gounaud sat in the chair close to but not blocking the door, and Defendant Howley sat in the other chair on the opposite side of the desk. The office contained one window, the blinds on which were closed to prevent distractions from the search taking place outside the office.

Agent Gounaud stated that he did not provide Miranda warnings to Defendant Howley. He had been trained that the Miranda warnings were only appropriate if the person was in custody, if the person had a pending federal charge, or if the person was significantly deprived of his or her freedom tantamount to an arrest. He believed that none of these three situations applied during his interview of Defendant Howley. The defendant was not handcuffed or restrained, and nothing blocked the defendant's access to the door. No one told the defendant that he could not leave, and in fact, Howley along with all the employees were informed at the briefing in the break room that they were free to leave. Agent Gounaud testified that he was dressed in a suit and tie. Neither he nor Agent O'Connor showed their weapon to Defendant Howley.

Agent Gounaud testified that the beginning of the interview was business-like and,

4

at times, during the interview, the parties were laughing. He stated that neither he nor the other two raised their voices during the interview. The first two-thirds of the interview involved asking the defendant about factual background. Agent Gounaud stated that parts of the interview were serious, and, at one point, he confronted Defendant Howley with the fact that Gounaud believed the defendant was lying. He advised the defendant that 18 U.S.C. § 1001 prohibited lying to a federal investigator and that this offense carried a five-year penalty. He said within five to ten minutes, the defendant agreed that he had been lying. After the defendant made this admission, the tone of the interview changed and the defendant began relating information relevant to the theft of trade secrets. Agent Gounaud showed the defendant several documents during the interview, and, each time, he would get up to hand the document to the defendant. At the end of the interview, he asked the defendant for his cellular telephone. The interview lasted one and one-half to two hours. Agent Gounaud said he made no threats or promises to Defendant Howley during the interview.

On cross-examination, Agent Gounaud testified that the interview was not video or audio-taped. He stated that based upon his training, he would not give the Miranda warnings unless it was an "arrest-type" situation. He acknowledged that about forty-five minutes into the interview, he confronted the defendant with lying. He advised the defendant that a violation of section 1001 was a felony, which carried the penalty of imprisonment. Agent Gounaud said that if the defendant had asked to leave during the interview, he would have allowed him to do so. He admitted that he did not ask the defendant if he wanted to leave. During the interview, he showed the defendant seven photographs, a copy of an email, and several forms from Goodyear, including the sign-in log and the privacy statement. Agent Gounaud stated that the defendant's cellular telephone was listed in the search warrant and that he took the cellular telephone at the end of the interview. He

5

acknowledged that the search warrant did not permit the search of the defendant's person.

On redirect examination, Agent Gounaud testified that Defendant Howley's cellular telephone was specifically listed on the attachment to the search warrant. At the end of the interview, he asked the defendant for his cellular telephone. The defendant gave it to him without objecting.

Defendant Clark Roberts testified in his own behalf that his career at Wyko spanned twenty-five years. In September 2007, he was the Director of Engineering at Wyko in Greenback, Tennessee. In this position, he supervised five engineers, communicated with customers and Wyko's overseas entities, participated in some financial statements, had managerial and human resources responsibilities, and also performed some engineering and design work. Defendant Howley was one of the engineers whom he supervised.

Defendant Roberts stated that by September 2007, he had worked in a private office with a door for five months. He had a laptop computer that he took home and on trips. His work email account was protected with a password and could only be accessed by himself and his supervisors. He used his Wyko email account to communicate with Wyko engineers and employees; customers, which included all major tire manufacturers; and even friends and family to include his wife. He did not expect other employees, aside from his superiors, to have access to his email. He kept copies of his email on his laptop computer, and these emails were also backed up on the server. He believed it to be company policy that no one could use the server to access someone else's email or information. Some information contained on the server could be accessed by others, for example other engineers could access drawings. Defendant Roberts stated that Defendant Howley's office was in an open work station shared with four other engineers

6

Defendant Roberts testified that Wyko's main computer database was located in a locked room, to which he did not have a key. Persons who were not Wyko executives had to get permission from a manager to enter the room. Everything electronic was stored on this database, including company documents, customer and commercial information, drawings, personnel files, drafts, and email. Knowledge of Defendant Roberts' password was necessary to access his information on the server.

On cross-examination, Defendant Roberts stated that in 2007, supervisors could request access to the server through the "IT" manager. Defendant Roberts' laptop computer was password protected. No one else knew his password but the "IT" employee could override it. Defendant Roberts agreed that the server contained a lot of information that was not related to him. He also acknowledged that once he sent an email, he lost control over what happened to it. He stated that some of his files were not backed up on the server, such as his personal correspondence, letters, Word documents, and Excel spreadsheets. He could designate which files were to be backed up and the others defaulted to being saved only on his hard drive. Drawings were among those files that were backed up. Defendant Roberts agreed that drawings and communications with customers "belonged" to Wyko. He stated that he was not a corporate officer at Wyko.


### III. FINDINGS OF FACT

On September 25, 2007, FBI agents executed a search warrant for the premises of Wyko Tire Technology. Among other things, this warrant authorized the seizure of computers and Wyko's server. At the beginning of the search, all employees were instructed to go to the employee break room. There, an FBI agent told them that Wyko was being searched and told them that they

7

did not have to remain inside during the search. Special Agent Kevin Gounaud was present in the break room and asked to see Sean Howley. Howley accompanied Agent Gounaud and Agent O'Connor to a private office, where the agents interviewed Howley for one and one-half to two hours. During this interview, Howley admitted to theft of trade secrets. At the end of the interview, Agent Gounaud asked Howley for his cellular telephone, which Howley produced from his person and gave to Gounaud.

All other relevant factual findings will be made as a part of the analysis of the issues.


# IV. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The defendants contend that their rights under the Fourth Amendment were violated by both the issuance and the execution of the September 2007 search warrant authorizing the search of Wyko. As an initial matter, the government argues that the defendants lack a legitimate expectation of privacy in the business records of their employer and, thus, cannot challenge the search warrant. With regard to the issuance of the search warrant, the defendants maintain that the search warrant was not sufficiently particular because it did not specify a methodology for narrowing the search of computer information. They also fault the execution of the search warrant, contending that the executing officers seized electronic materials and then searched those materials

8

an infinite number of times and in an unlimited manner. Defendant Howley also contends that the officers improperly seized a cellular telephone from his person, which was not a location to be searched in the warrant. Finally, Defendant Howley moves for the suppression of the statement he gave on the day the search warrant was executed, contending that the statement (1) was involuntary and (2) was the fruit of an illegal search. The Court will address each of these arguments in turn.

## A.  Search Warrant

On September 25, 2007, the undersigned issued a search warrant [Exhibit 4] for the premises of Wyko Tire Technology Inc., located in Greenback, Tennessee. Although the witnesses at the November 12 hearing did not testify regarding the date that the search warrant was executed, the receipt for property taken during the search [Exhibit 2] reveals that the warrant was executed on that same day. The defendants challenge both the issuance and the execution of the search warrant.

### (1) Standing of Defendants to Challenge the Search Warrant and the Search

The government argues that the defendants do not have a legitimate expectation of privacy in the property of their employer and, thus, cannot object to a search of Wyko. It asserts that they are not corporate officers and, thus, not persons aggrieved by a search of the corporation. At the November 12 hearing, the government argued that the computer files in question were the property of Wyko. Additionally, it asserted that Defendant Roberts had no ability to control what happened to emails or files once they were saved on the server.

The defendants argue that they have standing to challenge the search warrant because items in which they enjoyed a legitimate expectation of privacy were seized. Defendant Roberts

9

argues that pursuant to the search warrant, agents seized his laptop computer, his email, files on which he was working that were located on the computer file servers, and documents and papers. He asserts that he had a personal and reasonable expectation of privacy in his work space and the items seized, even when they were shared with others. At the hearing, defense counsel argued that Defendant Roberts had standing to challenge the search and seizure of his laptop computer and any files and email contained thereon. Defense counsel also stated that Defendant Roberts had a legitimate expectation of privacy in certain files on the server, specifically the back up copies of his email and any items on the server over which Roberts had exclusive control because they were password protected or for which Roberts had a degree of control greater than the general Wyko employee. Defense counsel contended that the defendant's exclusive control over his computer or the server was not required because he had an expectation that those files could not be accessed by others beyond his superiors.

The Supreme Court has interpreted the protections granted by the Fourth Amendment to extend to "commercial premises" as well as homes, <u>Mancusi v. DeForte</u>, 392 U.S. 364, 367 (1968), but has held that "[a]n expectation of privacy in a commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home, " <u>New York v. Burger</u>, 482 U.S. 691, 700 (1987). In order to contest whether a search comports with the Fourth Amendment, the defendant must have "a reasonable expectation of privacy" in the location searched. <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978). "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." <u>United States v. Talley</u>, 275 F.3d 560, 563 (6th Cir. 2001). Whether the defendant enjoys a reasonable expectation of privacy does not turn

10

solely upon the defendant's subjective belief but also depends upon (1) the defendant's interest in and control of the place searched, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable. United States v. Padin, 787 F.2d 1071, 1075-76 (6th Cir.), cert. denied, 479 U.S. 823 (1986).

"It has long been settled that one has standing to object to a search of his office, as well as of his home." DeForte, 392 U.S. at 369; see also United States v. Mohney, 949 F.2d 1397, 1403 (6th Cir. 1991) (observing that "[i]n some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search"), cert. denied 504 U.S. 910 (1992). On the other hand, "[w]here the documents seized were normal corporate records not personally prepared by the defendant and not taken from his personal office, desk, or files, in a search that was not directed at him personally, the defendant cannot challenge a search as he would not have a reasonable expectation of privacy in such materials." Mohney, 949 F.2d at 1403. In the present case, Defendant Roberts testified that at the time of the search, he had his own private office and laptop computer that was password protected. Roberts' testimony suggests that he either prepared or reviewed and supervised the creation of the files and email contained on his laptop computer. Although the search warrant authorized the search of Wyko and not Defendant Roberts personally, Defendant Roberts is named throughout the affidavit in support of the search warrant as a person involved in the photographing of Goodyear's swab down system. Accordingly, the Court finds that Defendant Roberts has a legitimate expectation of privacy in anything seized from his office and all of the files on his laptop computer.

With regard to Defendant Howley, the Court also finds that he has a legitimate expectation of privacy in files and information taken from his work space and personal computer.

11

Although the Court heard no testimony regarding Defendant Howley's computer, it assumes that his computer was also imaged during the search based upon the defendants' representations in their motion to compel discovery [Doc. 70]. Moreover, although Defendant Howley worked in an open work station, the diagram of Wyko's facility [Exhibit 1] reveals that he had his own cubical-type area, which is consistent with Defendant Roberts' testimony. Finally, the affidavit in support of the search warrant reveals that Defendant Howley was also specifically named as one involved in photographing Goodyear's swab down system. Accordingly, the Court finds that Defendant Howley has a legitimate expectation of privacy in anything seized from his work station and in all of the files on his laptop computer.

The harder question is whether the defendants have standing to challenge the search of information contained on Wyko's server. The Court finds that the server contained files that employees such as Defendant Roberts designated to be stored there and files that were automatically "backed up" or copied there, such as email. Some files on the server were password protected and others, such as files of drawings, could be accessed by a number of employees. The Court also finds that the server contained a large amount of information to which Defendant Roberts had no access or relation.

Whether the defendants enjoy standing regarding items stored on Wyko's server turns upon whether their asserted expectation of privacy in those items was objectively reasonable. As discussed above, the Court assesses the reasonableness of an expectation of privacy by looking to (1) the defendant's interest in and control of the place searched, (2) any measures the defendant took to ensure privacy, and (3) whether society recognizes the defendant's expectation as reasonable. Padin, 787 F.2d at 1075-76. In the present case, the Court finds that the defendants had little to no

control over Wyko's server. Defendant Roberts testified that the server room was locked and that he did not have a key. Moreover, although he could designate some files from his computer to be saved to the server, he could not access all information on the server. The Court infers from Defendant Howley's position as an engineer supervised by Defendant Roberts that he had no more control over the server than did Defendant Roberts and likely even less.

With regard to measures the defendants took to ensure privacy in the server, Defendant Roberts testified that some of his files that were stored on the server were password protected. Finally, the Court finds that the defendants' expectation of privacy in some information that they stored on the server, especially those files that were password protected, was an interest that society would recognize. See DeForte, 392 U.S. at 369 (concluding that the defendant, a union officer, reasonably expected that certain records were private, even though he shared an office with other union officers. On the other hand, Defendant Roberts agreed that email was out of his control once he sent it. The Court notes that the system would likely back up an email from the defendants' computers but also from their in-house recipients' computers. Thus, numerous copies of any given email exist on the server. The Court finds that the defendants could not be secure in the privacy of their email and other similarly situated files on the server. See Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001) (observing that the sender "would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient"). But, c.f., Quon v. Arch Wireless Operating Co, 529 F.3d 892, 906 (9th Cir. 2008) (holding that sender and recipients may have a reasonable expectation of privacy in the content of text messages sent from a pager provided by the sender's employer), cert. granted, City of Ontario v. Quon, No. 08-1472, 2009 WL 1513112 (U.S. Dec. 14, 2009).

In so finding, the Court is guided by the decision of the District Court for the District

of Connecticut, which held that while a supervisor had a reasonable expectation of privacy in his own work area and in other areas in which he worked, he had no reasonable expectation of privacy in data on computers other than that on his own desk. United States v. Costin, No. 3:05-CR-38, 2006WL2522377, *6 (D. Conn. July 31, 2006). Similarly, the present defendants could not expect privacy in computer files, other than their own files that were password protected, on Wyko's server. On the other hand, the password protected files resemble the records in United States v. Mancini, 8 F.3d 104, 110 (1st Cir. 1993). In Mancini, the First Circuit found that the defendant, a mayor, had an objectively reasonable expectation of privacy in his work records stored in an "archive attic" because the storage area was upstairs from his office of nineteen years, the defendant took precautions to assure that others would not have access to the records without his prior permission, and the defendant's records were labeled and segregated from the other items stored in the attic. Id. Here, by having some files on the server password protected, the defendant(s) took steps to make sure that others could not access his/their files. Accordingly, the Court finds that the defendants had no reasonable expectation of privacy in data stored on the server other than their own files that were password protected.

In summation, the Court finds that the defendants have standing to challenge the search of their offices/work spaces, the search of their individual work computers, and the seizure of their own, password protected files on the server, if any existed.


*(2) Was the Search Warrant Sufficiently Particular?*

The defendants contend that the search warrant was not sufficiently particular because it failed to specify the documents and files to be searched. They maintain that by permitting

14

the executing officers to conceivably open and view every file on the computer, the search warrant essentially provided no limitation on the search of the computer. The government argues that Wyko's computer server and the defendants' hard drives were seized because they were likely to contain the records specified in the search warrant. It contends that the Fourth Amendment does not require a search warrant to state the methodology to be used in searching a computer.

The Fourth Amendment requires that a search warrant "particularly describ[e] the place to be searched and the persons or things to be seized." U.S. Const. am. IV. The particularity requirement forecloses the opportunity for a general search and "prevents the seizure of one thing under a warrant describing another" by restricting the discretion of the executing officer. Marron v. U.S., 275 U.S. 192, 196 (1927). "However, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." United States v. Henson, 848 F.2d 1374, 1383 (6th Cir. 1988). The description of items to be seized pursuant to a search warrant is sufficient "'if it is as specific as the circumstances and the nature of the activity under investigation permit.'" Id. (quoting United States v. Blum, 753 F.2d 999, 1001 (11th Cir. 1985)).

In the present case, the search warrant[2] authorizes the search of Wyko. Attachment B lists the items to be seized, including "Computers, computer hardware, software, computer related documentation, [and] passwords . . ., which contain evidence related to violations of Title 18, United States Code, Sections 1832 and 2314 as described more fully in paragraphs three (3) through seven (7) below." Paragraphs three through seven of Attachment B describe the types of documents or

---

[2]The search warrant, search warrant affidavit, and supporting documents remain under seal in order to protect any references to trade secrets contained therein. The Court will refer to these documents only to the extent necessary and in such a way as to protect that interest while still explaining its recommendation.

data for which the executing officers were authorized to search Wyko and its computers. Paragraph three permits the seizure of "[p]hotographs, blue prints, drawings, sketches, diagrams, designs of manufacturing equipment and manufacturing processes which contain trade secret information belonging to Goodyear[.]" Paragraph four allows the officers to seize "correspondence, including e-mail[,]" between certain named entities from January 2006 through the time of the execution of the search warrant, "which discuss or refer to trade secret information belonging to Goodyear[.]" The fifth paragraph authorizes the seizure of correspondence, email, and documents "related to travel by Wyko employees to Goodyear[.]" Paragraph six permits the seizure of records relating to contracts with the Haohua South Guilin Rubber Company. Finally, the seventh paragraph allows the officers to seize documents relating to "the export of trade secret information belonging to Goodyear . . . from any Wyko entity to a foreign country."

The defendants argue that the search warrant fails to limit in any fashion the search of computer data by government agents. First, they argue that the search warrant improperly allows the executing officers to search for evidence of trade secret violations, rather than limiting the search to the seizure of contraband or to the instrumentalities or fruits of the crime. Second, they contend that an evidentiary hearing is necessary to determine how the executing officers knew that the computers seized contained evidence of trade secret violations. Third, they assert that arguably, under the present search warrant, the agents could open every file on a computer in order to discern whether it contained evidence of trade secret violations. They contend that this unparticularized access to computer data violates the Fourth Amendment's prohibition against general warrants.

Rule 41(c) of the Federal Rules of Criminal Procedure provides that a "warrant may be issued for"

(1) evidence of a crime;

(2) contraband, fruits of crime, or other items illegally possessed;

(3) property designed for use, intended for use, or used in committing a crime; or

(4) a person to be arrested or a person who is unlawfully restrained.

Although the defendants cite to a Supreme Court case they claim leaves open the possibility that there may be items with evidentiary value that can never be reasonably seized because of their nature, the Court finds that it is not necessary to follow that analytical rabbit trail because it finds that the defendants' computers and the Wyko server would be instrumentalities of the alleged crimes. In this regard, the Court observes that the Superseding Indictment alleges that Defendant Howley emailed the photographs of purported trade secret information to Defendant Roberts using his work email account. Defendant Roberts is alleged to have forwarded the photographs to other Wyko employees using his work email account.

Second, the defendants contend that an evidentiary hearing is necessary for the Court to determine how the executing officers knew that the computer server and hard drives in question could be seized. The Court held an evidentiary hearing on November 12, 2009. The government produced the testimony of FBI Agent Kevin Gounaud in relation to the statement by Defendant Howley. Defendant Roberts testified in his own behalf with regard to the defendants' standing to contest the search of Wyko. Despite having the requested evidentiary hearing, the defendants did not elicit any evidence regarding how the executing offices knew that the Wyko server and their individual computers[3] contained evidence of trade secret violations. Nevertheless, the Court finds

---

[3]As discussed above, the defendants lack a legitimate expectation of privacy in any other computer hard drives that might have been seized in the September 25, 2007 search of Wyko.

that the affidavit in support of the search warrant provides probable cause for the seizure of both defendants' computers. The affidavit reflects that during the investigation, the investigating agent received a copy of an email sent from Defendant Roberts' work email account, forwarding another email dated June 1, 2007, which discusses photographs taken by Defendant Howley with his cellular telephone. The photographs are attached to the email and document trade secret information belonging to Goodyear. The header of the June 1 email reflects that Defendant Howley was copied on that email. This email establishes that the defendants' work computers were being used to disseminate and store information regarding the stolen trade secrets.

Third, the defendants contend that the search warrant is insufficiently particular because it does not limit the areas on their computers that the executing agents could search. Therefore, they maintain that the agents both seized and subsequently searched data and files for which there was no probable cause. The Sixth Circuit has upheld the seizure of a computer and the subsequent search of the computer off-site due to the "technical difficulties of conducting a computer search in a suspect's home[.]" Guest v. Leis, 255 F.3d 325, 334-35 (6th Cir. 2001). In so holding, the appellate court observed that such a procedure necessarily involved the seizure of computer data unrelated to the offenses. Id. at 334. The government contends that every other circuit to consider the issue has also held that the seizure of a computer (or a copy of its hard drive) and its subsequent search offsite does not violate the Fourth Amendment. See United States v. Giberson, 527 F.3d 882, 886-87 (9th Cir. 2008) (holding that "where there was ample evidence that the documents authorized in the warrant could be found on [the defendant's] computer, the officers did not exceed the scope of the warrant when they seized the computer"); United States v. Grimmett, 439 F.3d 1263, 1269 (10th Cir. 2000) (holding that search warrant authorized both the seizure and

18

offsite search of the computer); United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (concluding that "[a]s a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain" the contraband sought, child pornography). The defendants have not cited any contrary authority, nor has the Court located any.

The defendants contend that even if the seizure of the computers and their offsite searches were proper, the agents could not search every file on the computers for evidence of theft of trade secrets. They liken each file on a computer to a separate container and argue that no probable cause exists to search every container.

Initially, the Court notes that the affidavit supporting the search warrant contains a two and one-half page section entitled Specifics of Search and Seizure of Computer Systems. In this section, the affiant states that a search of a computer typically requires the seizure of the computer (or a copy of the hard drive) and subsequent "process[ing]" by an expert in a controlled environment. The affidavit states that this procedure is necessary because computers contain vast amounts of information and the user can conceal information by storing it randomly and using misleading file names. Additionally, experts and a controlled environment are required to search the computer in a way that both protects the integrity of the files and uncovers hidden or deleted materials.

The Court begins by observing that search warrants are typically concerned with what items may be seized, i.e., what the officers are searching for, rather than the method in which the officers execute the search: "The warrant process is primarily concerned with identifying *what* may be searched or seized-not how-and whether there is sufficient cause for the invasion of privacy thus

entailed." Upham, 168 F.3d at 537. When executing a search warrant, officers are permitted to look in any container or location on the premises that could hold the items to be seized, even if those containers are not specified in the search warrant. See United States v. McLavain, 310 F.3d 434, 439 (6th Cir. 2002) (finding search under a bed and in a garage to be objectively reasonable pursuant to a search warrant for a fugitive because a person could hide in these locations). In order to search a container, it must be reasonable that the item(s) listed in the search warrant could be found therein. Id.; Gilberson, 527 F.3d at 887-88. As the Supreme Court has noted with regard to searches for documents, the executing agent may examine some "innocuous" items "at least cursorily, in order to determine whether they are, in fact, among those [items] authorized to be seized." Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976).

Thus, when the search warrant permits the agents to search a computer, they may search all of the files in that computer for the items to be seized:

> Searching agents have the authority to look in any place where the evidence sought may be found. The methods employed in executing search warrants are left to the searching agent's discretion as long as the methods are reasonable. Contrary to Defendant's argument, [the executing officer] seized all of the computer equipment, not each individual file. This was proper because all of the computer equipment and storage devices were within the scope of the search warrant. [The executing officer] thus acted reasonably in executing the search warrant, and his examination of each file on Defendant's computers and storage media was reasonable and necessary.

United States v. Ogden, No. 06-20033-STA, 2008 WL 4982756, *3 (W.D. Tenn. Nov. 18, 2008) (holding that executing officer did not exceed the scope of the search warrant); see also Gilberson, 527 F.3d at 889-90 (holding that officers could search all the files on the computer for child pornography. "[S]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files

located in the computer's hard drive in order to determine whether they contain such evidence." United States v. Jack, No. S-07-0266, 2009 WL 453051, *4 (E.D. Cal. Feb. 29, 2009) (collecting cases).

The government likens this case to United States v. Tillotson, No. 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008), in which agents seized the defendant's computer pursuant to a search warrant and then examined its entire contents off-site for evidence of child pornography. In Tillotson, the Court found that due to the user's ability to assign misleading file names to the evidence sought, it was "necessary to search basically every file on the computer" to locate specific data such as child pornography. Id. at *4. The government argues that the same is true with regard to the evidence of theft of trade secrets in the instant case.

The defendants seek to distinguish Tillotson by pointing to the differences in the types of items to be seized (images of child pornography vs. evidence of theft of trade secrets) and the fact that the crime in Tillotson was ongoing as opposed to limited in scope, as the defendants characterize the instant crimes. They argue that these differences permitted less specificity in the Tillotson search warrant. The Court disagrees with this parsing of the cases. In both Tillotson and the instant case, the search warrant authorizes the seizure of certain types of computer files (there images of child pornography, here email and other kinds of files containing evidence of theft of trade secrets) that are unlikely to be named something that would indicate their contents. See Id. Moreover, the Tillotson court's analysis of the ongoing nature of the crime related to its analysis of the staleness issue. See Id. at *3. The court reasoned that the defendant would be likely to retain the illegal images, thereby reducing the concern that the items sought would no longer be on the computer. Id. Although no staleness issue has been raised in the instant case, the Court would note

21

that, here, the defendants allegedly stole the trade secret in order to use it in designing a similar machine to fulfill a contract and, thus, would likely retain the items sought.

Based upon its analysis of the relevant case law, the Court concludes that the agents properly seized the defendants' computers and searched all the files therein for the items listed in paragraphs three through seven of the search warrant. The search warrant is sufficiently particular to inform the executing agents of the items to be seized.

*(3) Did the Execution of the Search Warrant Exceed Its Scope?*

The defendants argue that because the search warrant failed to specify a limiting methodology for searching the seized computers or to particularize those areas of the computers that could be searched, the warrant was executed like a general exploratory warrant, contrary to the Fourth Amendment. They contend that technology exists that could have limited the government's intrusion into parts of the computers for which there was no probable cause to search. Additionally, the defendants raise the possibility in their reply brief that the execution of the instant search warrant violated Rule 41(e)(2) because it potentially exceeded ten days in duration. The defendants ask the Court to assess the reasonableness of the execution of the instant search warrant, specifically with regard to the scope and duration of the searches of computers.

The government responds that the Fourth Amendment does not require that search warrants authorizing the search of a computer be limited in the way that the defendants suggest. Moreover, it contends that such limitations would be difficult to implement in practice.

The only information in the record regarding the execution of the search warrant at issue is the following: (1) Defense counsel's proffer that only federal agents and federal Computer

22

Analysis Response Team (CART) employees participated in the search of Wyko, (2) Agent Gounaud's testimony that Wyko employees were asked to congregate in the break room and that the search was taking place as he interviewed Defendant Howley, and (3) the receipt of the property seized in the search [Exhibit 2]. Nevertheless, the Court has found that the executing agents could search all of the files contained on the defendants' computers and on the server for the items listed in paragraphs three through seven of Attachment B to the search warrant. Because the extent of the search was proper, the Court also generally finds that a search of all the data on the computers for the items in Attachment B was reasonable, does not exceed the scope of the search warrant, and does not convert the search warrant into a general warrant, even without any limiting methodology in place.

The Fourth Amendment requires particularization in only two respects: In "the place to be searched" and "the persons or things to be seized." United States v. Grubbs, 547 U.S. 90, 98 (2006). "'Nothing in the language of the Constitution or in [the Supreme] Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed.'" Id. at 99 (quoting Dalia v. United States, 441 U.S. 238, 255 (1979) (first alteration added)). Although the level of particularization necessary in each case turns upon the circumstances and the activity under investigation therein, Henson, 848 F.2d at 1383, the Court observes that the Sixth Circuit has not required such a limiting methodology in discussing the constitutionality of a search of all the files on a computer. Guest v. Leis 255 F.3d 325, 334-35 (6th Cir. 2001). In Guest, which was discussed in the preceding section, the Sixth Circuit affirmed both the particularity and the execution of the search of a computer, which the court acknowledged involved searching files not

listed in the search warrant.  Id.  In its analysis, the appellate court at no point discusses whether a limiting methodology was in place or suggests that one was required.  Id.

Additionally, the Ninth and Tenth Circuits have not required search warrants authorizing the search of a computer to have a limiting methodology for the manner in which the search would be executed.  United States v. Hill, 459 F.3d 966, 977 (9th Cir. 2006); United States v. Brooks, 427 F.3d 1246, 1251 (10th Cir. 2005); see also United States v. Cartier, 543 F.3d 442, 447-48 (8th Cir. 2008) (acknowledging that "there may be times that a search methodology or strategy may be useful or necessary" but declining "to make a blanket finding that the absence of a search methodology or strategy renders a search warrant invalid per se"); United States v. Khanani, 502 F.3d 1281 (11th Cir. 2007) (holding that lack of a written search methodology did not require suppression, particularly when agents took precautions to search only those computers and analyze only those files that were likely to contain items within the scope of the search warrant); see, generally, United States v. Upham, 168 F.3d 532, 537 (1st Cir. 1999) (observing that the "warrant process is primarily concerned with identifying *what* may be searched or seized–not how").  In Hill, the Ninth Circuit found that requiring a search methodology or protocol in a search warrant would be "unreasonable" due to the fact that a computer user can easily disguise files.  Id. at 977.  The court explained that it "look[ed] favorably upon the inclusion of a search protocol; but its absence is not fatal."  Id.  Finally, the Ninth Circuit noted that regardless of the inclusion or absence of a search methodology, the executing officer is always limited by the fact that he or she may not use any search warrant to conduct a "general, exploratory search."  Id. (internal quotation omitted).  In Brooks, the Tenth Circuit observed that it "has never required warrants to contain a particularized computer search strategy.  We have simply held that officers must describe with particularity the

objects of their search." 427 F.3d at 1251. The Court finds the reasoning in these cases to be persuasive. In the present case, the affidavit supporting the search warrant states that a review of the data on the computers can take days, weeks, or even months, depending on the volume of data contained on the computers. It also notes that searching authorities must examine all of the data on the computers to determine whether it contains an item listed in the warrant because a computer's user can store information on the computer using "deceptive file names" or in "random order." Based upon this information and the specificity of the items to be seized, the Court finds that a search of all the files on the defendants' computers and on Wyko's servers for the items listed in Attachment B was reasonable.

The defendants also raise the possibility that the duration of the search may have violated Rule 41 of the Federal Rules of Criminal Procedure. At the time that the instant search warrant was executed and the computer hard drives were seized, Rule 41(e)(2)(A)(i) provided that a search warrant "must command the officer to . . . execute the warrant within a specified time no longer than 10 days." The defendants argue for the suppression of the evidence seized from their hard drives and the server, contending that if the analysis of the seized data occurred more than ten days following the issuance of the search warrant on September 25, 2007, then the agents violated Rule 41. The Court finds that the ten-day limitation on the execution of a search warrant applies to the seizure of the computers or, alternatively, to the imaging of their contents. "The subsequent analysis of the computer's contents is not a search in the sense contemplated by Rule 41 of the warrant." Tillotson, 2008 WL 5140773, at *6 (upholding examination of computer's files beyond Rule 41's 10-day limitation of the authority of a search warrant). Several other district courts have also held that Rule 41's ten-day rule did not limit the subsequent analysis of seized computer files.

Matter of the Search of the Scranton Housing Authority, 436 F. Supp. 2d 714, 727 (M.D. Pa. 2006) (holding that a continuing search of computer files did not violate Rule 41, the purpose of which is to prevent stale warrants, because once the computer in question was imaged within the time specified in the warrant, the evidence was "frozen in time" alleviating the concern that probable cause would have ceased to exist), vacated on other gnds, 487 F. Supp. 2d 530 (M.D. Pa. 2007); United States v. Hernandez, 183 F. Supp. 2d 468, 480 (D.P.R. 2002) (holding that "[n]either Fed. R. Crim. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic examination after it has been seized pursuant to a search warrant"); United States v. Triumph Capital Group, Inc., 211 F.R.D. 31, 66 (D. Conn. 2002) (holding with regard to the analysis of computer data, Rule 41 does not impose "any time limitation on the government's forensic examination of the evidence seized").

The defendants cite to United States v. Mitchell, which held that the search of a computer hard drive pursuant to a search warrant obtained twenty-one days after the warrantless seizure of the hard drive was unreasonable. 565 F.3d 1347, 1351 (11th Cir. 2009). The Court finds this case to be inapposite to the instant analysis. The Eleventh Circuit's decision turns upon the reasonableness of the defendant being deprived of his "possessory interest" in his hard drive for twenty-one days with no search warrant in place, not the reasonableness of the duration of the analysis of electronic data seized pursuant to a search warrant. See Id. at 1351-52. In the instant case, the Court finds that the agents seized the evidence within the ten-day time limitation of Rule 41. Finally, the Court notes that Rule 41 has now been amended to reflect the distinction between the time the computer data is seized and the time that it is analyzed:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically

stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

Fed. R. Crim. P. 41(e)(2)(B) (effective Dec. 1, 2009). The commentary to the new rule explains that

> [c]omputers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location. This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant.
> . . . .
> In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the [now fourteen-] day execution period to the actual execution of the warrant and the on-site activity. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs. The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued. However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time.

Fed. R. Crim. P. 41(e)(2)(B), Committee Comments to the 2009 Amendments. The Court likewise finds that applying the 10-day time limitation in Rule 41 to the seizure or imaging of the computer files, rather than their subsequent analysis, advances the safeguards intended for the computer's owner/user while recognizing the practical challenges inherent in analyzing electronically stored data.

Accordingly, the Court finds that the forensic analysis of the data on the defendants'

27

computers and on Wyko's server without a written search methodology and in excess of the 10-day time limitation in Rule 41 does not violate the Fourth Amendment.

*(4) Was Defendant Howley's Cellular Telephone Improperly Seized?*

Defendant Howley argues that the executing agents exceeded the scope of the search warrant when they seized his cellular telephone from his person because his person was not listed as a location to be searched in the warrant.[4] Although it argued generally that search warrant was supported by probable cause, the government failed to address the execution of the search warrant or this argument specifically in its response in opposition [Doc. 50] to the defendant's motion. The defendant argues in reply that the government has thereby waived any opposition to the suppression of his cellular phone. At the November 12 hearing, the government argued that Defendant Howley was not searched but, instead, gave his cellular telephone to the agents at their request. Defendant Howley contended that the agents' request for the telephone in combination with the surrounding circumstances was tantamount to a search of his person. Moreover, he argued that even if he was not searched, the telephone was improperly *seized* from his person pursuant to the search warrant.

The Court initially addresses the defendant's contention that the government has essentially conceded this issue by failing to address it in its response. Our local rules provide in pertinent part that the "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D.TN. LR7.2. The government did file a five-page response [Doc. 50] to

---

[4]Although the defendant filed his motion [Doc. 25] and supporting memorandum [Doc. 26] under seal, the Court finds that the portions discussing the seizure of the cellular telephone do not disclose any trade secrets and deems those portions unsealed for the purposes of the report. As discussed above, the defendant withdrew the other arguments in this motion at the November 12 hearing.

28

Defendant Howley's sealed suppression motion [Doc. 25], but it did not address the third of the defendant's four contentions: "That the search warrant did not authorize the search of the person of Sean Howley." On June 11, 2009, the defendant filed a reply [Doc. 61], pointing out that the government had failed to respond to this argument and asking the Court to deem such failure to be a concession of the issue. The government did not seek to supplement its response in the five months between the filing of the reply and the hearing. While the Court might not normally be inclined to deem a partial response to a motion to be a waiver of a neglected issue, here, the government did not respond even in the wake of having the possible oversight brought to its attention. The Court knows of no way to interpret this course of conduct other than a waiver of the issue. Accordingly, if the only basis for the seizure of Defendant Howley's cellular telephone was the search warrant, then the cellular telephone should be suppressed.

At the hearing, the government argued that Defendant Howley's person was not searched but that, instead, he voluntarily provided his cellular telephone to the agents at their request. The defendant responded that the provision of the telephone was not voluntary under the circumstances. The Court will address whether the telephone was received pursuant to an exception to the warrant requirement, specifically whether the defendant gave the cellular telephone to the agents consensually. "It is well-established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search." United States v. Van Shutters, 163 F.3d 331, 335 (6th Cir. 1998) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, (1973)). The government bears the burden of proving that the consent was voluntary and not "the result of coercion, duress, or submission to a claim of authority" based upon the totality of the circumstances. Id. The government must make this showing through "clear and positive testimony" and to a

preponderance of the evidence.  <u>United States v. Worley</u>, 193 F.3d 380, 385 (6th Cir. 1999).

The voluntariness of the consent to search is determined by looking to the totality of the circumstances.  <u>Bustamonte</u>, 412 U.S. at 227; <u>United States v. Jones</u>, 846 F.2d 358, 360 (6th Cir. 1988).  "Among the relevant circumstances to be scrutinized are the defendant's youth, lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning."  <u>Jones</u>, 846 F.2d at 360.  "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent."  <u>Bustamonte</u>, 412 U.S. at 227.

In the present case, the Court finds that Defendant Howley agreed to be interviewed by Agents Gounaud and O'Connor and accompanied them to a Wyko vice president's office.  The tenor of the interview was primarily business-like, although approximately half-way through the one and one-half to two hour interview, the agents told the defendant that they believed he was lying. They also informed him that lying to a federal investigator was a felony with a penalty of imprisonment prison.  About five minutes after this discussion, the defendant's "tone" changed, and he began telling the agents information relevant to their investigation of theft of trade secrets.  Near the end of the interview, the agents and the defendant discussed the contents and location of the defendant's cellular telephone.  The agents asked the defendant for his telephone.  The defendant produced it from his person and gave it to them without objection.  The agents did not advise Defendant Howley of the <u>Miranda</u> warnings during the interview.

The Court finds that the totality of the circumstances in this case reveal that the defendant voluntarily gave his cellular telephone to the agents.  The defendant, a Wyko engineer,

agreed to be interviewed and accompanied the agents to the Wyko office where the interview took

place. Although the defendant was not informed of his ability to refuse to turn over the telephone

or of his Miranda rights, the questioning was not prolonged, and the defendant was not deprived of

food or sleep. Moreover, no evidence exists that the defendant believed himself to be under arrest

or that he was arrested that day. C.f., Jones, 846 F.2d at 361 (holding that consent was not valid

when the uneducated defendant believed that he was under arrest from the time he was stopped by

officers and his car was blocked by three police cruisers). The Court does not find the circumstances

of the interview to be coercive, and the defendant has presented no proof to the contrary.

Although the circumstances surrounding the interview were not coercive (as

discussed more fully in the final section below), the Court must determine whether the defendant's

action in handing over the phone without objection constituted consent. Agent Gounaud testified

that he asked the defendant for his cellular telephone, and the defendant handed him the phone

without objection. To be voluntary, consent must be more than mere acquiescence to apparent

lawful authority. Bumper v. North Carolina, 391 U.S. 543, 546 (1968); Worley, 193 F.3d at 386.

It must also be more than a mere submission to authority and must evidence understanding and an

intentional waiver. United States v. Jones, 641 F.2d 425, 429 (6th Cir. 1981). The Sixth Circuit has

previously held that an affirmative non-verbal action in combination with other factors can

constitute voluntary consent. United States v. Taylor, No. 96-4169, 1998 WL 109979, at *6 (6th

Cir. Mar. 4, 1998). In Taylor, the defendant silently got out of his car and opened the trunk in

response to the officers suggestion that they look in the trunk for the rental agreement. Id.; see also

United States v. Anderson, No. 92-3387, 1993 WL 2302, at *7 (6th Cir. Jan. 6, 1993) (holding that

the "action of opening a piece of luggage in view of the agents and then providing Special Agent

Bowie with the combination to the second suitcase indicates nonverbal consent). The court held that the defendant's "actions constituted voluntary, non-verbal consent to a search of his trunk[:]"

> While [Defendant] Taylor's choices at the moment of decision were not appealing, the circumstances of the encounter suggest that Taylor could have refused to let [Officer] Sgambellone look in the trunk. Sgambellone was no[t] threatening Taylor with personal detention, with a weapon, or with abusive language, and the traffic stop occurred in the [l]ight o[f] morning o[n] a public street.

Taylor, 1998 WL 109979, at *7. Likewise, in the present case, the Court finds that the defendant's action of removing the cellular telephone from his person and handing it to the agent constituted an affirmative and voluntary, non-verbal consent to the agents' request for his telephone. Although the evidence is admittedly sparse, the Court finds that the government has shown that the defendant voluntarily provided his telephone to the agents by a preponderance of the evidence.

## B. Defendant Howley's Statement

Defendant Howley contends that his statement given on September 25, 2007, should be suppressed because it was involuntary and the fruit of an illegal search. He argues that he was interrogated in a small room with a single door and covered window for nearly two hours. He maintains that he was not free to leave during the interview, was not told that he could decline to answer questions, and was not told that he could have a lawyer present. He asserts that the agents questioned him in a confrontational style, told him that he had lied to them, which is a crime, and told him that he had better cooperate. He argues that under the totality of the circumstances, his statement was not voluntary because he was not advised of his Miranda rights and did not feel free to leave. The government responds that the defendant was not in custody when he gave his

statement and, therefore, was not entitled to the <u>Miranda</u> warnings.[5]

The Fifth Amendment protects against a defendant being "compelled in any criminal case to be a witness against himself."  In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his or her rights under the Fifth Amendment.  <u>Miranda v. Arizona</u>, 384 U.S. 436,478-79 (1966); <u>see also</u> <u>United States v. Salvo</u>, 133 F.3d 943, 948 (6th Cir. 1998).  "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial." <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994); <u>Salvo</u>, 133 F.3d at 948.

The obligation to administer <u>Miranda</u> warnings to suspects only arises if there has been "such a restriction on a person's freedom as to render him 'in custody.'" <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977) (per curiam).  To determine whether an individual is in custody for purposes of <u>Miranda</u>, the Court examines the totality of the circumstances to assess how a reasonable person in that situation would have interpreted the situation.  <u>Salvo</u>, 133 F.3d at 948; <u>see also</u> <u>United States v. Swanson</u>, 341 F.3d 524, 528 (6th Cir. 2003).  "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  <u>Stansbury</u>, 511 U.S. at 323; <u>Mason v. Mitchell</u>, 320 F.3d 604, 631 (6th Cir. 2003).  The "'ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"  <u>United States v. Knox</u>, 839 F.2d 285, 291 (6th Cir. 1988) (quoting <u>California v.</u>

---

[5]The government also contends that the defendant has failed to raise any issue of fact that would entitle him to an evidentiary hearing.  The Court addressed this issue at the November 12, 2009 hearing, finding that the defendant had sufficiently raised the issue of whether he was in custody or free to leave at the time he gave his statement.  Following this finding, the government presented the testimony of Agent Gounaud.

33

Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted); Swanson, 341 F.3d at 529.

In determining whether a defendant was in custody, the Court examines the totality of the circumstances to ascertain a reasonable person's understanding of the situation. Salvo, 133 F.3d at 948. Relevant to the inquiry is whether a reasonable individual in the same position as the defendant would have felt free to leave. Swanson, 341 F.3d at 529. Other factors useful in making this determination are:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

Salvo, 133 F.3d at 950; see also Swanson, 341 F.3d at 529.

In the present case, the Court makes the following factual findings with regard to the circumstances surrounding the defendant's statement: On the day of the search of Wyko, all the employees were directed to the employee break room. Once there, an FBI agent explained what was happening and advised them that they did not have to remain inside during the search. At the conclusion of this explanation, Agent Kevin Gounaud asked for Defendant Howley. When Defendant Howley approached, Agent Gounaud introduced himself and Agent O'Connor, shook Howley's hand, and told him that he would like to speak with him. Howley walked with the agents to a Wyko vice president's office. The office, which was sixteen by twenty feet, had one window and one door. The blinds on the window remained closed during the interview, and the search of Wyko was going on outside the office. The office was furnished with a desk and three chairs, one

34

of which was behind the desk and two others were on the other side of the desk. During the interview, Agent O'Connor sat behind the desk, Agent Gounaud sat in the chair closest to the door and window, and the defendant sat in the third chair between a wall and the door. Although Agent Gounaud was the closest to the door, he was not blocking the defendant's access to the door. During the interview, the agents were dressed in suits and ties and their weapons remained hidden.

The tenor of the interview, which lasted one and one-half to two hours, was primarily business-like. None of the participants raised their voices during the interview. The participants laughed during parts of the interview and parts were serious. About halfway into the interview, the agents confronted Defendant Howley with lying. They told him that pursuant to 18 U.S.C. section 1001, lying to a federal investigator is a felony that carries a penalty of imprisonment. Approximately five to ten minutes later, the defendant admitted that he had been lying. Following that admission, the defendant's "tone" changed and he began giving the agents information relevant to their investigation of theft of trade secrets. During the interview, Agent Gounaud stood up to hand the defendant several pictures and documents. The agents did not advise the defendant of the Miranda warnings during the interview, nor did they tell him that he was free to leave. At the end of the interview, the agents and the defendant discussed the location and contents of the defendant's cellular telephone. Agent Gounaud asked the defendant for his cellular telephone. The defendant produced it from his person and gave it to Gounaud without objection.

Based upon these facts, the Court determines that Agent Gounaud and O'Connor's purpose in interviewing the defendant was to investigate the theft of trade secrets. Agent Gounaud testified that he had a list of fifteen people he wanted to interview during the search and that Defendant Howley was a priority. The Court finds that the location of the interview, a vice

president's office at Wyko, the defendant's place of employment, was neither hostile nor coercive. The Sixth Circuit has twice analyzed the interview of a defendant at his or her place of employment. In United States v. Crossley, the defendant was interviewed in a large classroom with windows at the military camp where she worked. 224 F.3d 847, 862 (6th Cir. 2000). The appellate court determined that the location, which was "not a confined space which could be intimidating[,]" to be one factor supporting its determination that the interview was noncustodial. Id. Similarly, in United States v. Mahan, the appellate court concluded that an employee questioned at his place of employment was not in custody. 190 F.3d 416, 422 (6th Cir. 1999). In this case, the Court also finds that the location of the interview, a spacious and comfortable office, is a factor indicating the situation was noncustodial.

Moreover, although Defendant Howley was informed along with the other employees in the break room that he could leave during the search, once he went to the office with the agents, he was not told that he could leave. This factor, alone, is not determinative of the outcome of the inquiry. See Crossley, 224 F.3d at 862 (defendant not told that she could leave); Mahan, 190 F.3d at 422 (defendant not told that he could leave). Although the agents initiated the interview by asking the defendant to speak with them, the defendant complied with their request and walked to the office with them, just after he had been advised that he could leave the premises during the search. The Court also finds that the defendant's movement was not restrained during the interview. His access to the door was not blocked, nor was he handcuffed or otherwise physically restrained.

Finally, the tenor of the interview was business-like and not intimidating. The officers were dressed in professional clothing and did not display their weapons. Although the officers confronted the defendant with lying and informed him that such constituted a felony that

36

could result in prison time, these facts, alone, also do not render the interview custodial. See Crossley, 224 F.3d at 862 (finding that "[a]lthough [the agent] told [the defendant] that she could be arrested if she lied, a reasonable person would understand that this statement applies to anyone who lies to federal agents and was not specifically directed to her particular situation in that interview"); Mahan, 190 F.3d at 422-23 (determining that although the agent told the defendant "that giving false information during the interview would be a serious matter[,]" that factor did not "even remotely constitute[] a restraint on the freedom of movement to the degree associated with formal arrest"). Finally, the length and timing–a maximum of two hours during business hours–of the interview were not oppressive.

Considering the totality of the circumstances, the Court finds that Defendant Howley was not in custody during the interview by Agents Gounaud and O'Connor. It is well-settled that a person is not entitled to be advised of the Miranda warnings when questioned in a noncustodial setting. United States v. Warner, 971 F.2d 1189, 1201 (6th Cir. 1992) (holding that a statement was admissible despite the absence of Miranda warnings because the suspect was not in custody when interrogated). Accordingly, the Miranda warnings were not required. Finally, Defendant Howley's statement was not the fruit of an illegal search because the Court has found that the search of Wyko pursuant to a search warrant comports with the Fourth Amendment. The Court recommends that the District Court deny Defendant Howley's motion to suppress his statement [Doc. 19].

## V. CONCLUSION

After carefully considering the motions, memoranda, testimony, exhibits, and oral arguments and after reviewing the relevant legal authorities, the Court finds that the search warrant properly issued and was properly executed. Additionally, it finds that Defendant Howley's statement was voluntary. For the reasons set forth herein, it is **RECOMMENDED** that the defendants' Motion to Suppress Statements [**Doc. 19**], Sealed Motion to Suppress Search Pursuant to Search Warrant [**Doc. 25**] and Motion to Suppress [**Doc. 39**] be **DENIED**.[6]

Respectfully submitted,


    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

38