IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-175 |
| | ) | |
| CLARK ALAN ROBERTS and | ) | (PHILLIPS/SHIRLEY) |
| SEAN EDWARD HOWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on February 16, 2010, for a motion hearing on the government's Motion For A Protective Order [Doc. 98]. Assistant United States Attorneys D. Gregory Weddle and Thomas Dougherty appeared on behalf of the government. Attorneys W. Thomas Dillard and Stephen Ross Johnson were present for Defendant Roberts. Attorney Douglas A. Trant represented Defendant Howley, who was also present. The parties presented argument on the pending motion, and the Court took the motion under advisement at the conclusion of the hearing.

**I. BACKGROUND**

The government's motion seeks a protective order requiring that (1) exhibits containing confidential and trade secret information not be displayed to the public during trial, (2)

the exhibits containing confidential and trade secret information be sealed from further public disclosure, and (3) jurors not disclose the contents of exhibits containing Goodyear trade secrets [Doc. 98, pg. 7].

Although the facts are relatively simple, the resolution of this motion is anything but simple. The defendants have been indicted (currently by way of a Second Superseding Indictment [Doc. 97]) by the Grand Jury, charging them with one count of conspiracy to commit theft of trade secrets, seven counts of theft of trade secrets, three counts of wire fraud and one count of conspiracy to commit wire fraud. The salient allegations in the Indictment are that the defendants were employed by Wyko Tire Technology Incorporated (Wyko US) a subsidiary of Wyko Group Limited (Wyko). Wyko, pursuant to a contract, was to manufacture a "Swab Down System, which was also known as a roll over-ply down device." [Doc. 97, ¶ 5] It is alleged that Wyko had never manufactured a roll over-ply down device for large OTR (off the road) tires. However, Goodyear Tire Company (Goodyear) did have "multiple roll over-ply down devices in its Topeka, Kansas tire manufacturing facility that were used to manufacture OTR tires." [Doc. 97, ¶ 9] It is alleged that Goodyear's roll over- ply down device contained trade secret information and that Goodyear had implemented numerous security measures to protect the confidential, proprietary, and trade secret information contained in the roll over-ply down device. These security measures included restricting access to the roll over-ply down devices by locating them behind locked gates and doors. Visitors were admitted only for limited purposes, only after receiving prior permission to visit by Goodyear, signing a non-disclosure agreement, and registering at a manned security gate. Additionally, a sign at the entrance gate announced that cameras were not allowed in the facility. Visitors were escorted by a Goodyear employee who restricted the visitor to equipment and

2

information relevant to the limited purpose of the visit. Visitors could not take photographs in the tire manufacturing facility.

The Indictment further alleges the defendants intended to and did make false and material representations to Goodyear that the only reason for their visit to the Topeka facility was to evaluate Wyko-made equipment in the facility for possible repairs. At the time of these representations, the defendants really intended to, and did, take unauthorized photographs of Goodyear's roll over-ply down device. According to the Indictment, Defendant Howley took seven photographs of the roll over - ply down device with a cellular telephone equipped with a camera, while Defendant Roberts kept a lookout for Goodyear employees. Defendant Howley allegedly down-loaded these seven photographs from his cellular telephone to his personal email account, emailed them to his work email account, and the next day sent the seven photographs to Defendant Roberts' email account. Defendant Roberts is alleged to have sent the photographs to two Wyko UK employees, to be used to assist Wyko in constructing a roll over-ply down device, which it was manufacturing.

## II. THE GOVERNMENT'S POSITION

The government contends, and the Indictment alleges, that the seven photographs at issue contain Goodyear's confidential and trade secret information and that a protective order is necessary to protect this information from further disclosure. In this regard, the government argues that the plain language and the purpose of the Economic Espionage Act (EEA), 18 U.S.C. § 1831 et seq., permit the requested protective order. First, citing to section 1835, the government contends that the plain language of the EEA mandates that the Court enter protective orders to preserve

confidential, proprietary trade secrets involved in this type of litigation. See 18 U.S.C. § 1835. Second, it asserts that the purpose of the EEA is to protect commercial trade secrets and proprietary information from theft and economic espionage. The government contends that if trade secrets are disclosed to the public during litigation, then the purpose of the EEA will be defeated because victims will not want to cooperate for fear of further diminishing or destroying the value of their trade secrets.

The government acknowledges that its request for a protective order implicates certain constitutional and common law rights but argues that Goodyear's need to protect its trade secrets should prevail. It maintains that the defendants' Sixth Amendment right to a public trial is not affected or infringed by the requested protective order because the government does not seek to close the trial proceedings nor to exclude the public therefrom. Moreover, it contends that the common law right of public access to court records is not absolute but, instead, is subject to exceptions, which exist in this case. The government asserts that when this common law right is balanced against the potential for misuse or exploitation of the seven photographs for improper purposes, the scales are tipped in favor of the limited denial of public access requested here. The government argues that the presumption that the public should have access to the seven photographs in question is rebutted by the plain language of section 1835 and the potential harm to Goodyear.

### III.  THE DEFENDANTS' POSITION

The defendants oppose the government's request for a protective order, arguing that the request is untimely, unwarranted, unconstitutional, and unduly suggestive. They first ask the Court to deny the motion as untimely because, at the latest, it should have been made before the

expiration of the extended motion-filing deadline of August 21, 2009. Second, they argue that the statute provides for protective measures for actual trade secrets, not "alleged" trade secrets, and thus, the government must first establish that the information sought to be protected is actually a trade secret. In oral argument, the defendants asked the Court to hold a pretrial hearing or mini-trial to determine whether the seven photographs constitute a trade secret under the EEA. Third, the defendants assert that the government's proposed restrictions (that the seven photographs be sealed and not be displayed) would violate the Sixth Amendment right to a public trial as well as their rights to due process, a fair trial, and confrontation. Thus, the defendants claim that the proposed protective order is inconsistent with constitutional provisions concerning criminal jury trials and the Federal Rules of Criminal Procedure. Finally, the defendants contend that the requested restrictions would unfairly suggest to the jury that these photographs are somehow confidential, proprietary, or secret, which is one of the issues for the jury to decide at trial.

## IV. LAW

"[T]he purpose of the [Economic Espionage Act is] to provide a comprehensive tool for law enforcement personnel to use to fight theft of trade secrets." United States v. Yang, 281 F.3d 534, 543 (6th Cir. 2002). With regard to the issue before the Court and in a section entitled "Orders to preserve confidentiality," the EEA provides as follows:

> In any prosecution or other proceeding under this chapter, the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws. An interlocutory appeal by the United States shall lie from a decision or order of a district court authorizing or

> directing the disclosure of any trade secret.

18 U.S.C. § 1835. This Court has discovered no case law applying section 1835 in the context of a federal criminal jury trial. Moreover, the Court observes that there is an apparent dearth of authority on the general protection of trade secrets during a jury trial. Thus, the Court must turn to other, analogous principles for guidance.

The Court begins with the premise that "[e]very Court has supervisory power over its own records and files[.]" Nixon v. Warner, 435 U.S. 589, 598 (1978). Although courts "recognize a general [or common law] right to inspect and copy public records and documents, including judicial records and documents[,]" this right is "not absolute." Id. Instead, a court may deny access to judicial records when those documents could "become a vehicle for improper purposes." Id. Such improper purposes include the use of court records "to gratify private spite or promote public scandal[,]" "to serve as reservoirs of libelous statements for press consumption[,]" and "as sources of business information that might harm a litigant's competitive standing[.]" Id. (internal quotations omitted). The decision of whether to disclose court records is a matter within the trial court's discretion, which is "to be exercised in light of the relevant facts and circumstances of the particular case." Id. at 599.

Sixth Circuit case law supports the use of a protective order to shield confidential information contained in court records from the public. The Sixth Circuit has examined the issue of a District Court's enforcement after trial, of a protective order issued before trial. National Polymer Products, Inc. v. Borg-Warner Corp., 641 F.2d 418 (6th Cir. 1981). In that case, as requested here, a protective order was entered pretrial regarding protection against disclosure of the proprietary and confidential information of Borg-Warner. Thereafter, the case was tried in open

6

court, and "[a]t no time did Borg-Warner move for in camera proceedings or request any other restriction on the exposure of others to the evidence in the case. No reassertion or even mention of the protective order was made at the trial. The trial was attended throughout by the general public and on occasion by members of the press." Id. at 420-21. After the trial, Borg Warner sought to enjoin the use of this confidential information. The District Court granted an injunction against further disclosure holding that "release of information gained in discovery within the scope of the protective orders previously referred to would constitute a violation of such orders, despite the fact that some of this information was revealed in testimony in open court during the trial of this cause." Id. at 421. Although the matter was remanded for further findings by the district court, the appellate court observed "[a]s for preserving the secrecy of documents which are relevant to the litigation, the protective order could have been drawn expressly to require the submission of confidential matter to the trier of fact under seal." Id. at 424 (citing Downs v. United States, 382 F. Supp. 713, 758 (M.D. Tenn. 1974), rev'd on other gnds, 522 F.2d 990 (6th Cir. 1975)).

The facts of National Polymer, and the potential for public misuse of the information disclosed at trial, are precisely what the government (and undoubtedly Goodyear[1]) seeks to prevent. In this case, as in National Polymer, the defendants were provided the information in question for use in preparation for trial. The above quote indicates approval of a procedure whereby the information is protected by an order precluding public dissemination and requiring submission of the confidential matter to the jury under seal.

---

[1]Goodyear is not a party to this case but, instead, is the alleged victim who is not responsible for the initiation of this prosecution. Nonetheless, its interests are involved solely as the result of this prosecution and the allegations regarding defendants' actions as to those interests.

7

Likewise, in the cited case of Downs v. United States, the district court ordered "all documents and materials relating to hijacking signals and related FBI procedures should not be publically disseminated and would therefore be made available to plaintiffs and introduced into evidence under seal." 382 F. Supp. 713, 758 (M.D. Tenn. 1974). The court conducted a balancing test between the public's interest in the dissemination of evidence introduced in court and the interest in preserving the secrecy of FBI policies and procedures which could be compromised if revealed publically. The court found "this latter interest clearly outweighs the former, and this is particularly true where the information involved has been fully disclosed to plaintiffs for use in the preparation of their case. The court therefore holds that the protective order was properly utilized in these proceedings and did not offend the principles underlying the public trial requirement."[2] Id.

The Downs case also stands for the proposition that the Court has authority to issue protective orders precluding public dissemination of confidential, secret matters and requiring introduction of such evidence under seal, following a balancing test weighing the respective interests. The use of such a protective order is particularly appropriate when, as in this case, the information has been fully disclosed to defendants for their use in preparing for trial.

Finally, courts have recognized the discord between litigating to protect confidential information and disclosing that same confidential information during the litigation. A Pennsylvania district court grappled with this issue in E.I. Dupont DeNemours Power Co. v. Masland, 222 F. 340 (C.D. Penn.), rev'd.224 F. 689 (3rd Cir. 1915), rev'd 244 U.S. 100 (1917). The district judge was called upon to decide whether to restrain a defendant from disclosing allegedly secret processes to

---

[2]This case was reversed on other grounds regarding finding of negligence, but this holding by the District Court was not reversed.

his experts. The court there was faced, as here, with the dilemma of a plaintiff claiming the processes were secret, but the defendant claiming they were not. While the issue in the Dupont case was whether to allow disclosure to the experts, whereas the question herein is whether to allow disclosure to the public, the "predicament" is essentially the same.[3] Id. at 341. The Court finds instructive and persuasive the statement of the district judge in upholding the preliminary injunction: "It would, of course, be idle to the point of flat absurdity for the trial judge to compel the plaintiff to publicly disclose its processes in the act of protecting them from disclosure." Id. The same reasoning appears applicable to the case herein. A certain absurdity exists in requiring Goodyear to publicly disclose the trade secrets at issue in a prosecution of the alleged theft and disclosure of those same trade secrets.

From this case law, the Court gleans that a protective order directing the sealing and non-display of confidential and proprietary information from the public does not violate the right to a public trial if the Court finds that the protective order is necessary after balancing the interests of the various parties involved.

## V. ANALYSIS

Defendants do not contest the language of 18 U.S.C. § 1835 or its direction that the Court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets[.]" To the contrary, they argue that (a) the government's request for such an order is untimely, (b) the statutory mandate applies but only to actual trade

---

[3] The District Court, hearing the case without a jury, did indicate the simple solution at trial was to hear the disputed evidence *in camera*, which in the undersigned's opinion is the non-jury equivalent of sealing in a jury trial.

secrets and not to "alleged" trade secrets, (c) the requested protective order would generally violate their constitutional rights, and (d) the procedures requested by the government are unduly suggestive. Defendants do not contest that the statute envisions protecting trade secrets at trial, nor do they contest the government's legal argument regarding the placing of reasonable limitations on public access to such records and exhibits. Defendants do appear to contest the procedure suggested by the government (non-display to the public and sealing of exhibits) to the extent defendants argue generically that such procedure violates their rights to a public and fair trial and due process and more specifically, that such procedure would "unfairly suggest to the jury that in fact, the materials at issue in this case are somehow confidential, proprietary, or secret, which is the very question for the jury's determination at trial." [Doc. 102, pg. 8]

### A. Timing of Government's Motion

The defendant's contend that the government's Motion for a Protective Order is untimely because it was filed some five months after the expiration of the extended motion-filing deadline, which was August 21, 2009. They argue that the government raises issues of first impression, of which it should have been aware at least since the filing of the protective order for discovery, and fails to provide good cause for the late-filing of the instant motion. The Court dispenses with this argument quickly. The Court finds the government's motion to be in the nature of a motion *in limine* because it deals with the presentation of (and notably not the admissibility of) exhibits at trial. Such motions are properly raised in close proximity with the trial. Moreover, the continuance of the instant trial to March 23, 2010, to insure Defendant Howley's continuity of counsel has provided the parties with ample time to litigate this issue. Finally, the Court finds that

10

this issue is properly addressed in the weeks preceding the trial, rather than at the trial itself, so that the parties and the Court have time to implement any special procedures that are granted. Accordingly, the Court finds that the motion is not untimely and that even if it were, good cause exists for the timing of the government's motion. See Fed. R. Crim. P. 12(e) (providing that a court may permit a late-filed motion for good cause shown).

### B. Preliminary Finding of Trade Secrets

The defendants argue that before the Court can impose any protective measures on the parties pursuant to section 1835, it must first determine that the seven photographs in question in fact depict actual trade secrets. The Court does not believe that in this case, section 1835 requires a mini-trial or contested hearing prior to trial, as defendants suggest. The Court does not have to decide whether the materials or information at issue are in fact actual trade secrets in order to determine whether to issue a protective order as mandated in section 1835. The bases for the Court's conclusion are several.

First, neither the EEA nor section 1835 specifically contains an actual or implied provision for such a mini-trial. This legislation is designed to protect proprietary economic information and commercial trade secrets. See Yang, 281 F.3d at 543. Section 1839(3) defines a trade secret, and section 1835 provides for the preservation of the confidentiality of trade secrets. 18 U.S.C. §§ 1835, 1839(3). It seems doubtful Congress envisioned that both the Court, before trial, and the jury, during trial, would have to decide in contested hearings whether the materials in issue constituted an actual trade secret. If Congress had so envisioned such a pretrial contested hearing, it could have, should have, and arguably would have provided statutory language indicating

11

so. It would have also likely provided the procedure for such a contested hearing as well as the burdens and standard of proof to be used for such pretrial determinations. The Court finds this to be particularly true if it accepts defendants' argument that this pretrial determination would be necessary in every prosecution under this statute.

Second, even if the Court held such a preliminary hearing, the Court is not provided any guidance on the appropriate standard of proof necessary to decide whether the materials are actual trade secrets so as to invoke the protections in section 1835. It seems unlikely that the standard of proof would be beyond a reasonable doubt, but whether typical lesser standards of "probable cause," "good cause," a "prima facie case," "preponderance of the evidence," or "clear and convincing evidence" (as proposed by defendants) would apply at such a hearing is unknown. While the government must in all cases tried under this act, in all courts, prove to the jury's satisfaction beyond a reasonable doubt that the information in issue constitutes a trade secret, the standard of proof at a preliminary hearing or mini-trial would vary from court to court and case to case.

Third, under a format where two hearings are held on the issue of whether the information constitutes a trade secret, the Court and the jury could reach inconsistent decisions. Fourth, the Court questions whether the proposed preliminary hearing would necessarily still have to be held in secret outside the public view.

Fifth, the Court further notes that if it held such a preliminary hearing and determined that the documents and information in issue qualified as trade secrets, all of the defendants' subsequent arguments regarding the procedure to be implemented will still remain. While defendants argue that the Court must decide the existence of a trade secret before applying

any of the section 1835 restrictions, they go on to object to the minimal restrictions suggested, not displaying the trade secret information to the public during trial and sealing the trade secret information. Conversely, if the proposed hearing resulted in a finding that the items in issue were not trade secrets, the Court would be faced with the question of whether, based on that decision, the case should proceed or be dismissed. The Court would also be faced with the issue of what, if any, preclusive effect such a decision would have on the prosecution. Thus, this procedure could also permit the defendants a backdoor method of seeking dismissal of the charges without having filed a motion to dismiss[4] or other motion challenging the items as trade secrets and could reverse the burden of proof.

This Court is not prepared to issue a fully dispositive opinion on all the above issues because the Court believes it is not necessary for the Court to do so in order to reach its decision in this matter. At a suppression hearing on November 12, 2009, the Court heard evidence, including sworn testimony by FBI Agent Kevin Gounaud and the search warrant and affidavit, regarding the photographs, emails transmitting them, the cell phone in issue, and statements by Defendant Howley. This Court also finds that the Superseding Indictment in this case provides probable cause determined by the Grand Jury, not the government, that the items referenced, and the only items in issue before this Court, to wit the seven photographs of the roll over-ply down device, contain trade secrets of Goodyear. Indeed, the entire prosecution is based on the alleged theft of trade secrets. In addition, the Indictment alleges with factual specificity and provides probable cause to believe

---

[4]The Court notes that the instant defendants did move [Docs. 27 and 29] to dismiss the indictment, contending the EEA is unconstitutionally vague as applied to them and that the indictment failed to allege necessary elements and facts. This Court recommended [Doc. 80] the denial of the motions, and the District Court adopted [Doc. 91] that recommendation in whole.

that these photographs meet the definition of a trade secret under section 1839(3). In addition, the Court notes that it has viewed the photographs but is not qualified to make a determination, based merely on such viewing, as to whether they contain trade secrets of Goodyear. Nevertheless, the Court finds that the probable cause finding in the Indictment, the evidence provided at the suppression hearing, and the government's representations about the potential harm to Goodyear if the photographs are disclosed constitute sufficient basis for it to determine whether a sealing order is appropriate.

In making this determination, the Court finds that the standard to apply is one of good cause. Good cause is the standard by which a Court may issue an order to protect a party in a civil case with regard to disclosing or revealing trade secrets or other confidential development or commercial information. Fed. R. Civ. P. 26(c)(1)(G). The Court is also guided in part as to the standard to be applied by its Local Rules. Local Rule 26.2(b) provides that Court records may be sealed only upon a showing of good cause. E.D.TN. 26.2(b). The government requests that the seven photographs at issue be sealed and be shielded from public view. The Court finds the additional prohibition on the display of these sealed photographs is simply a further measure to ensure the integrity of the sealing order. Finally, the Court observes that traditionally, a finding of good cause is based on the evidence provided (typically, pleadings and argument), usually without a contested evidentiary hearing.

Based on all the foregoing, in the absence of a pretrial motion by defendants specifically challenging the contention that these seven photographs show trade secrets, and in the absence of any proof or evidence to date that the photographs do not depict trade secrets, the Court finds good cause has been shown that these photographs are entitled to protection under section 1835

to preserve their confidentiality. The Court agrees with the narrowly tailored, minimal restrictions suggested by the government. The defendants have provided no factual rebuttal to the photographs qualifying as trade secrets, [5] but only a legal argument regarding the nature and extent of the protection to be provided.

### C. Constitutional Violations

The Court disagrees with defendants that any constitutional rights including Sixth Amendment rights of defendants will be adversely affected or infringed by placing reasonable and minimal restrictions on the public's, not defendants' or the jury's, right to have access to this information.

The defendants argue that testimony of witnesses must be taken in open court. This right is not abrogated by this ruling as testimony will be taken in open court. Defendants argue that the government must prove all elements of the charged offense beyond a reasonable doubt and that defendants are entitled to a speedy and public trial, a jury trial by an impartial jury and the right to confront witnesses. Nothing in this ruling abrogates those rights as the trial will be open to the public, the government will be held to its required proof and defendants will be entitled to a jury trial by an impartial jury and be permitted to confront witnesses. Accordingly, none of the constitutional rights raised by defendants will be affected or infringed by this ruling.

With regard to the common law right of public access to court records, the Court must

---

[5]The Court notes defendants claim they intend to challenge and rebut the claim that the photographs contain trade secrets at trial, but they have offered no proof or evidence to support such claims to date. Although the defendants are certainly not required to do so and may have strong strategic reasons not to do so, the fact remains that the Court has no evidence before it to rebut the claim.

balance the need to protect the potentially proprietary and confidential nature of the photographs as potential trade secrets against the defendants' rights in this criminal prosecution.  In this regard, the Court observes that the general public is less likely to be concerned with the specific details and precise nature of what the alleged trade secrets actually consist of, whereas Goodyear's competitors would be vitally interested in exactly that.  Under the facts of this case, the Court finds that both the need for protection and defendants' rights can be protected by a narrowly tailored order with reasonable and minimal limitations and restrictions, which seals the photographs and precludes only the public display or transmitting of these photographs during trial.  The defendants will not be prejudiced by this limited restriction on public dissemination inasmuch as the defendants already have these photographs, the jury and the Court will be able to view them, the defendants will have a trial open to the public, and the defendants will get to contest whether these photographs contain trade secrets or proprietary information at that public trial.  Thus in balancing the potential for irreparable harm that could result to Goodyear by public dissemination of its alleged trade secrets against the potential, but as noted herein unlikely, harm to defendants' rights, the Court finds the balance strongly favors Goodyear and the government's argument to the extent that the narrowly drawn restrictions will be acceptable.

### D.  Suggestiveness of Procedures

Finally, the defendants contend that precluding the display of the photographs to the public and placing the photographs under seal would "unfairly suggest to the jury that the photographs have been determined to be trade secrets," which is an issue for the jury to decide.  The Court notes first that there does not appear to be any reason why this should even come to the jury's

attention or that the actions taken would "suggest" anything. The presentation of the photographs can be done without the use of electronic display and handled in the "old fashioned method" of handing them to witnesses, entering them as exhibits, and publishing them to the jury. The sealing of the photographs can be done by the courtroom deputy, who can place them in an envelope marked "sealed" while the jury is out and can send them to the jury room without the envelope when the jury deliberates. In this manner, the photographs would not be displayed to the public or be available for copying by the public or competitors, while the defendants' rights would not be infringed. Even if electronic displays or other demonstrative aids are used, the monitors facing the public could simply be turned off without the jury being aware of the same. Furthermore, with only modest, reasonable efforts, any demonstrative aids could be placed so as to be readily visible to the jury but not the public without calling the jury's attention to such placement. Accordingly, the Court finds that the protective measures ordered herein will not suggest to the jury that the photographs are trade secrets. Finally, the Court notes that the defendants may request a special jury instruction that the jury attach no significance to the manner in which the photographs are handled or displayed.

Defendants raised in oral argument the fact that other exhibits or testimony might be offered which could be deemed to infringe on the Court's order. The short answer to this is that the defendants, or the government, should bring these matters to the District Court's attention as soon as possible and proffer any proposed exhibits in sealed envelopes to the District Court. Any proposed potentially infringing testimony should likewise be brought to the District Court's attention as soon as possible and, if such arises during trial, at a bench conference. In all cases, this is to be done outside the presence of the jury, preferably before trial, and certainly in a reasonable time before the evidence's intended use. Because District Judge Thomas W. Phillips will be aware of the

17

trade secrets issue, he can decide in his discretion whether to adopt the same protective measures regarding public viewing and access or implement others with regard to other exhibits or testimony.

## VI. CONCLUSION

The Government's Motion for a Protective Order [**Doc. 98**] is **GRANTED**. The seven photographs of Goodyear's roll over-ply down machine shall be sealed for trial in that only the Court (to include Court personnel), the parties, and the jury may see them. The seven photographs and any exhibits containing the seven photographs shall be displayed to the jury in such a way that public cannot also see them. The parties are expected to make all reasonable and appropriate efforts to maintain the secrecy of these photographs and to prevent the public display of these photographs in any manner, including monitoring any copies in the parties' possession to prevent public disclosure or display. The proposed protective order submitted by the government as an attachment to its motion is declined.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge